## SWOPE and Others *v.* FORNEY.

*A.* and *B.* entered into a contract by which the former agreed to purchase and deliver to the latter one thousand sheep. The contract was reduced to writing, and was signed by *A.*, and by two other persons as sureties for him, but was not signed by *B.* Suit by *B.* against *A.* and his sureties, alleging a failure to deliver the sheep. Answer, by the sureties: 1. That they executed the agreement upon the consideration that *B.* should also execute the same on his part, and that he neither signed the agreement, nor paid the money agreed to be advanced thereon. 2. That *B.* did not notify them of the acceptance of their guaranty, nor that he had given credit thereon.

*Held*, that the recital in the agreement of the payment of one thousand dollars by *B.*, as part of the consideration of the contract, was not conclusive, but that the fact of the payment might be inquired into.

*Held*, also, that if the sureties executed the agreement upon the consideration that *B.* should also execute it, and thus become mutually bound with *A.* for the performance of its conditions, they had a right to insist upon its execution by him, or to claim the benefit of his failure.

*Held*, also, that the pleadings did not make a case in which notice to the sureties of the acceptance of the security was necessary.

APPEAL from the *Putnam* Common Pleas.

HANNA, J.—*Forney* sued upon the following writing:

"GREENCASTLE, *March* 30, 1860.

"Article of agreement entered into between *B. Swope*, of the first part, and *P. Forney*, of the second part. The provisions of this agreement are as follows: *Swope* agrees to purchase and deliver to *Forney* one thousand sheep, to be in kind, in quality, in age, and in price, as follows: Ten bucks, and one thousand ewes, and the lambs belonging to the ewes; the bucks to be chosen by *Forney* out of the herds of sheep purchased by *Swope;* the quality of the sheep are all to be not less than half blooded merinos, up to full blood, and none over three years old, &c.; the sheep are not to be shorn before the fifteenth of *May;* the number to be full and complete on the day of delivery, &c.; also, the sheep, on driving them in to be delivered to *Forney*, are not to be driven more than ten miles in twenty-four hours, so as not to injure them for their journey to *Texas;* the sheep are all to be delivered and handed over to *Forney*, at —————, from the 20th day of *May*, to the 1st of *June*. *Forney* is to pay for bucks and ewes one dollar and thirty-five cents, each, and for all lambs over four weeks old on the day of delivery, twenty-five cents, each. *Forney* is to advance to *Swope*, on the purchase of said sheep, one thousand dollars; the balance to be paid on the delivery of the sheep. For the consideration of the above one thousand dollars paid to *Swope* by *Forney*, for the faithful fulfillment of the foregoing contract, in the event of a failure on the part of *Swope* to fulfill the contract as specified in its provisions, we, the undersigned, jointly and severally, bind ourselves in this obligation to pay *Forney* the sum of one thousand dollars, with interest, adding thereto all damages and expenses consequent upon the non-performance of the contract. In witness," &c.

Signed and sealed by *B. K. Swope*, *B. K. Swope, Jr.*, *W. S. Collier*, and *Clinton Wal.'s*.

The complaint was in four paragraphs:

*First.* For money had and received.

*Second.* On the special contract, against all the defendants, as principals, averring a performance by the plaintiff, by the payment of one thousand dollars, and a readiness to receive said sheep at, &c., and pay the balance. That said sheep, if delivered, would have been worth $3,500; that plaintiff was damaged $1,000, for moneys laid out, &c.; that *Swope* wholly failed to deliver said sheep, &c.

*Third.* Against *Swope*, Sr., as principal, and the other defendants as "sureties and guarantors" on the contract, and averring that the sheep were to be delivered at such place as might thereafter be agreed upon, to suit said *Swope*; that they agreed upon *Danville, Illinois*; that plaintiff paid the one thousand dollars, and kept and performed his part of the contract, and was ready, and offered to receive said sheep, and pay for the same; but that *Swope* wholly failed; that at, &c., on, &c., sheep were worth, &c. Wherefore, &c.

*Fourth.* Similar to the third, averring that the place of delivery agreed upon was *Greencastle*.

Answer in seven paragraphs, on the part of the sureties:

*First.* That they executed the contract in consideration that plaintiff should also execute the same on his part; and that he neither signed the same, nor paid to said *Swope* the one thousand dollars therein named, previous to the said 25th day of *May*, 1860.

*Second.* Averring that they executed the contract for the consideration named in the first paragraph of the answer, and for none other, and that plaintiff had wholly neglected to execute the same.

*Third.* Want of consideration.

*Fourth.* That plaintiff did not, at any time, pay said one thousand dollars; but that in *April*, &c., without the knowledge or consent of defendants, he paid said *Swope*, in depreciated bank notes, the nominal sum of $1,000, but of the real value of only $900, by reason whereof said *Swope* was less able to make said purchases, &c.

*Fifth.* That the plaintiff did not, on or before *June* 1,

Nov. Term, 1860, notify said sureties of the acceptance of said guaranty, 1861. or of credit being given thereon.

SWOPE v. FORNEY.

*Sixth.* That after the execution of said writing, said plaintiff and said *Swope*, without the knowledge, license or consent of said defendants, changed said agreement, in this, that said *Swope* should deliver said sheep at *Danville*, in the State of *Illinois*, remote from his and defendant's residence, and from the place where the contract was entered into, to wit, seventy-five miles.

*Seventh.* General denial.

A demurrer was sustained to the first, second, third, fourth, fifth and sixth paragraphs of said answer.

Upon this ruling the first error is assigned. One objection made to the first, second, third and fourth paragraphs was, that they attempted to set up matter in defense which the defendants were estopped by the instrument in writing from setting up, namely, that the one thousand dollars had not been paid to *Swope;* the payment and reception of said sum being acknowledged by the agreement. Is the estoppel apparent on the pleadings? It is insisted by the appellants, who were sureties and defendants, that as to them an admission in the written agreement could not be binding, in reference to the payment to their principal; but if considered binding when made, that in fact no such admission occurs in the instrument. They insist that in consideration of the execution of the writing, and the delivery by *Forney* to *Swope* of one thousand dollars, they guarantied that *Swope* would do certain things; that it was an executory contract, and they are entitled to the rights of guarantors growing out of such a contract; that the failure of the plaintiff to sign the instrument, and advance the money, released them.

It has been often held that the recital in a deed acknowledging the reception of the purchase money, or consideration, is not conclusive. 1 Greenleaf's Ev., § 26, n. 1. And in *Rockhill* v. *Spraggs*, 9 Ind. 30, it was held that where a deed stated the consideration to be $300, it might be shown by parol, not only that such sum was not paid, but that in fact the consideration was not the reception of money, but was natural love and affection.

Passing over the question, whether the receipt of the
money, in the case at bar, was acknowledged by the writing,
we are of opinion, as it was stated to be a part of the consid-
eration for the execution of said writing, that the writing is
not conclusive upon the subject. The truth may be inquired
into. See, upon this point, *McCrea* v. *Purmort*, 16 Wend.
460; *Clapp* v. *Tirrell*, 20 Pick. 247–250; *Meeker* v. *Meeker*,
16 Conn. 383; *Geddis* v. *Hawk*, 1 Watts, 280; *Mehaffy* v.
*Dobbs*, 9 *id.* 363–379; *Good* v. *Good, id.* 567; *Lewis* v. *Brad-
ford*, 10 *id.* 68. See, also, *Doe* v. *Oliver*, and *Duchess of
Kington's case*, 2 Smith's Lead. Cases, pp. 417, 424, and
many authorities referred to in notes.

As to the first and second paragraphs of the answer, appel-
lants insist that what might be the respective rights and
liabilities of the parties to this instrument, signed as it is, in
the absence of any special agreement on the subject, can
not be a question, because they there aver that it was agreed
that it should be signed by the plaintiff; that it was executed
by them upon the sole consideration that it should be exe-
cuted, and its stipulations complied with, by him; that they
had the right to make their execution depend upon that
of the other party, and that there was a failure of considera-
tion consequent upon his failure to execute, &c.

To this it is answered, in argument, that it is only neces-
sary for the party to be charged to sign; and we are referred
to *Smith* v. *Smith*, 8 Blackf. 208, and *Shirley* v. *Shirley*,
7 *id.* 452.

At common law, the contract here sued on would have
been binding if made by parol. But as it was in reference to
matters and sums which fall within the statute of frauds, that,
and adjudications under it, should govern, unless it is shown
that the appellants attempted to relieve themselves, or
rather to guard against the same. In a leading case in
*England*, on this point, *Laythoarp* v. *Bryant*, 2 Bingh.
N. C. 735, it is said: "Unless the plaintiff signs, there is a
want of mutuality. Whose fault is that? The defendant
might have required the vendor's signature to the contract."
Does it sufficiently appear by the pleadings that these
defendants did require the plaintiff's signature?

As before stated, it is expressly averred in the answer that the appellants executed the writing upon the sole consideration that the plaintiff was to execute it, and to pay the one thousand dollars, and that he had done neither. The pleadings show that the plaintiff was a resident of *Pennsylvania*, and that the sheep were to be driven to *Texas* by him; that the defendants were residents of *Putnam* county, in this State, and that other sums were to be paid on the contract, if fulfilled by plaintiff. There were strong reasons, therefore, for requiring that he should be bound, as well as the party here charged; and we are not able to perceive any valid reason why the appellants might not require him to sign, as well as their principal. If, in point of fact, they did execute upon the express understanding, or consideration, that the plaintiff was to become mutually bound, it would appear but right that they should insist upon the performance upon his part; or be permitted to claim the benefit of his failure, if such failure does result to their benefit. The demurrers should have been overruled.

The demurrer was properly sustained to the fifth paragraph of the answer. We do not believe that the pleadings make a case in which any such notice as that named in said paragraph was necessary.

As to the sixth paragraph, the demurrer was correctly sustained, because it professed to be an answer to the whole complaint, when in fact it was addressed to the facts set up in the third paragraph alone.

The conclusion on the questions presented on the demurrers, makes it unnecessary to look to the ruling on the motion for a new trial.

*Per Curiam.* — The judgment is reversed, with costs. Cause remanded, &c.

*D. R. Eckels, John A. Matson* and *J. A Scott*, for the appellants.

*Williamson* and *Daggy*, for the appellee.