PHILBROOKS *v.* McEWEN and Another

SURETY—DISCHARGE OF.—An affirmative act of the creditor, whereby any indemnity of which the surety might avail himself is put out of his reach, operates as a discharge of the surety *pro tanto.*

SAME.—But a surety is not discharged from his liability by the mere passive negligence of the creditor, whereby another sufficient security, held by such creditor upon the property of the principal debtor, becomes unavailable or worthless.

MARRIED WOMEN.—MORTGAGE.—The power of a married woman to incumber her real estate by mortgage, in which her husband joins, is not confined to the securing of existing notes or obligations, but is without limitation.

SAME.—A mortgage must somehow describe and identify the indebtedness which it is intended to secure; and this description is not a covenant in the sense of the statute, which enacts that a married woman shall not be bound by any covenant in her deed.

PRACTICE.—PLEADING.—A want of consideration must, under the code, be pleaded. On demurrer, mere inferences which a jury might draw from a comparison of dates will not be indulged.

APPEAL from the *Bartholomew* Common Pleas.

FRAZER, J.—Suit against husband and wife to foreclose a mortgage made on the 3d of *September*, 1866, upon real estate, the property of the wife. The mortgage was given to secure accommodation endorsers upon a note of the husband, payable in bank, and executed in *August*, 1866, for four thousand dollars. By the same instrument, which was executed by both husband and wife, a quantity of personal property of the husband, amply sufficient to pay the debt, was also mortgaged to the endorsers, to secure them for the same liability. It was provided in the mortgage that if the endorsers should obtain an extension of the indebtedness by renewal of the note, or otherwise, the mortgage should stand as their security the same as upon the original note. They did obtain an extension by renewal, and upon the maturity of the new note the husband was insolvent, and the endorsers were compelled to pay the debt. The wife, now appellant, answered in three paragraphs, very much alike, the best one of which averred that the plaintiffs negligently

failed to have the mortgage recorded until the lapse of five months after the delivery thereof; that they left the personal property mortgaged in possession of the husband, thereby enabling him to dispose of the same, which he did, for nine thousand dollars, before the maturity of the note given in renewal, whereby the security of the personal property was lost, to the injury of the wife, &c. The case went off on a demurrer to the answer, which was sustained, and judgment rendered against the defendants. The wife appeals, and the chief question here is, did the court below err in sustaining the demurrer to her answer? That the failure to have the mortgage recorded within ten days after its delivery rendered it void as to third persons, so far as it relates to the personal property covered by the mortgage, is a proposition settled in this State by statute. 1 G. & H. § 10, p. 352. The sale of the personal property by the husband, as alleged, which he was enabled to make in consequence of the neglect of the mortgagees to have the mortgage recorded in time, deprived the wife of the indemnity which the mortgage would otherwise have afforded, and left her real estate mortgaged to bear the whole burden of the debt, unless she may successfully claim that the negligence alleged discharges her land from the mortgage.

For the purposes of the present case, it may be assumed that when a wife mortgages her property for the debt of her husband, she may claim all the rights and privileges of a surety. The question then remains, does the merely passive negligence of a creditor, whereby another sufficient security held by him upon the property of the principal debtor becomes unavailable or worthless, discharge the surety; or, in this case, the real estate of the wife? In the absence of authority, the question would be one of some difficulty, for, as a problem of ethics, each side of it is capable of support by considerations of much weight. Should the creditor be active, not only to protect himself, but also to save the surety from ultimate loss, in the absence of bad faith, and when there is nothing in the contract or circum-

stances requiring such activity as an act of good faith to·the surety ? Might it not be answered, in the absence of proof, that the surety would not have become bound but for the fact that the creditor held a mortgage upon the debtor's chattels sufficient to make the amount; that the creditor was aware of this, and therefore that mere negligence to make the chattel mortgage available, by failing to record it, was bad faith to the surety ?

But the question is strictly one of existing law, and in its determination we must be guided by what has been adjudged. It is well settled that an affirmative act of the creditor, whereby any indemnity of which the surety might avail himself is put out of his reach, discharges the surety *pro tanto.* Such affirmative act would otherwise operate as a positive fraud upon the surety, and the consequences must fall upon the party who is guilty of the act. This is plain justice.

But we know of no American case where loss of another security, in consequence of mere passiveness, in the absence of a request to act, has been held to discharge the surety. The contrary was ruled in *Schroeppell* v. *Shaw,* 3 Comst. 446. In that case, the creditor, in consequence of most glaring negligence, failed to make the debt out of a collateral, not suing upon it for over two years, and finally neglecting to docket his judgment, whereby the lien was lost, and other liens attached to the ·whole value of ·the property within reach. There was no request to sue by the surety. The case was decided upon two grounds: 1. That after judgment at law against him, the surety could not have relief in equity, the facts being as available for defense at law as in a bill in equity. 2. That in any event, the facts were not sufficient to discharge the surety, because he was in default. He should have paid the debt, and then prosecuted the collateral himself, taking into his own hands the means of his indemnification. The learned judge who delivered the opinion in that case, after noticing the cases in detail which had been cited as being favorable to the surety, concludes

that "it has never been held that the mere passiveness of the creditor in the collection of his debt, either of the principal debtor or from collateral securities held by him, is sufficient ground for discharging the surety," and adds that the intention by which to determine in all cases whether acts done or omitted by the creditor will exonerate the surety is stated with perfect accuracy by Judge Story, thus: "If a creditor does any act injurious to the surety, or inconsistent with his rights; or if he omits to do any act, when required by the surety, which his duty enjoins him to do, and the omission proves injurious to the surety, the latter will be discharged." 1 Story's Eq. Jur., sec. 325. Nevertheless, the opinion contains some dicta which it is not easy to reconcile with the conclusion reached and quoted above. Thus, the omission to record a chattel mortgage, the very case at bar now, is put as an example to illustrate how a surety may be discharged. But this rests on no authority. *Capel* v. *Butler*, 2 Simons & Stu. 457, in commenting on which the remark occurs, is very far from sustaining it. In that case, two vessels were transferred by the principal debtor as security, but the transfer was invalid because not perfected according to the registry laws. It affirmatively appeared by the recitals of the bond, however, that the surety had become such on the faith of the vessels being effectually assigned as a security for the debt, an element most important in the case, and but for which *Capel* v. *Butler* would stand in conflict with all the cases upon the subject, both English and American, so far as our examination has enabled us to discover them, but with which it is not probably opposed to authority, though its correctness was denied in *Miller* v. *Gibbon*, 1 Moll. 502. It is one thing to become surety upon the faith of a fact which renders the risk slight, which the creditor can make a verity, but which he neglects to do, with a positive knowledge of the influence it had in inducing the surety to bind himself, and quite another to become surety without being influenced thereto by a positive and known reliance upon indemnity. In the first case, it may

Philbrooks *v.* McEwen and Another.

well be said that good faith requires the creditor to be dili-
gent, and neglect would be deception; in the last, that the
creditor, until requested, is not bound to act, and that if
the surety chooses to be passive, the creditor may also be
passive.

In *Hampton* v. *Levy*, 1 McCord Ch. R. (S. Car.) 107, and in
*Lang* v. *Brevard*, 3 Strobh. Eq. R. 59, the very question before
us was directly involved, and it was held, in both cases, that
the surety was not discharged.  In the last case, it was said
that he should have been diligent to secure his own protec-
tion by requesting the creditor to register the mortgage,
and that if such reasonable request had not been complied
with, then he would have been discharged.  In *King* v.
*Baldwin*, 17 Johns. 384, where the claim for discharge rested
upon the unreasonable failure to sue the principal debtor,
though requested, until he became insolvent, the same doc-
trine was applied after the fullest consideration.  Whether
it was justly applicable to such a case as that, has been
denied in many of the states, where it is held that the mere
request by the surety to sue the principal is not sufficient to
so impose that duty upon the creditor that its neglect will
discharge the former.  But this can but strengthen it as
against the surety.

The cases upon the question in hand are very fully col-
lected in the valuable notes to *Rees* v. *Berrington*, 2 Lead.
Ca. Eq., pt. 2, p. 707, and therefore we do not cite them in
detail.

Two other questions are made, which may be disposed
of together.  They are, 1. That the mortgage, having been
given a month after the original note was indorsed, was
without consideration as to the wife.  2. That the stipula-
tion in the mortgage that it should stand as security for a
note given in renewal of the original note, was not binding
upon the wife, and that the taking up of the original, by a
note in renewal, was an absolute satisfaction of the former
as to her. .

The first of these questions cannot avail the appellant, if

the decision of the second be against her. Joining with her husband, she can incumber her real estate by mortgage. 1 G. & H. §§ 5, 6, pp. 374–5; *id.*, § 6, p. 258; *Hubble* v. *Wright*, 23 Ind. 322; *Ellis* v. *Kenyon*, 25 *id.* 134. This power is not confined to the securing of existing notes or obligations. Except that the husband must join in the instrument, the power of a *feme covert* to convey or mortgage her lands is without limitation. A mortgage must somehow describe and identify the indebtedness which it is intended to secure. This one does nothing more. This description is not a covenant in the sense of the statute which enacts that a married woman shall not be bound by any covenants in her deed. It is an essential part of the mortgage itself. If it were conceded that as to the note existing when the mortgage was given, the mortgage was without consideration—a conclusion not warranted by the pleadings—it would still be good as to the indorsement of the note given in renewal, for that was made upon the faith of the mortgage. But a want of consideration must, under the code, be pleaded. On demurrer, mere inferences, which a jury might draw from a comparison of dates, are not to be indulged. These dates, without explanation, might be evidence of the fact, but they would not be conclusive. The fact itself must be alleged, and this was not done.

The judgment is affirmed, with costs.

*J. N. Kerr, S. Stansifer, F. Winter, T. A. Hendricks, O. B. Hord* and *A. W. Hendricks*, for appellant.

*J. E. McDonald, A. L. Roache* and *D. Sheeks*, for appellees.