7L 305
12L 680

WM. H. CHERRY *v.* SAMUEL B. MILLER.

1. BILLS AND NOTES. *Endorser. Agreement for delay.* To release a surety or accommodation endorser, the agreement for delay must be for a definite time, upon sufficient consideration, and without the consent of the surety or endorser.

2. SAME. *Negligence of creditor.* Where collaterals are placed in the hands of the creditor by the principal debtor as additional security, if the creditor undertakes to do any act, which he omits to do, as he had agreed, and loss results, he would be held liable. Or if he voluntarily releases or surrenders it to the prejudice of a surety, the surety will be released thereby.

3. SAME. *Same.* But mere omission to act, or passive negligence of the creditor, the surety himself being inactive, will not discharge such surety.

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby county. C. W. HEISKELL, J.

GANTT & PATTERSON for Cherry.

J. H. MALONE for S. B. Miller.

DEADERICK, C. J., delivered the opinion of the court.

In the circuit court of Shelby county, the defendant in error brought suit against H. A. Partee and plaintiff in error Cherry, upon a promissory note made by Partee and endorsed by Cherry.

20—VOL. 7.

Partee died and the suit was dismissed as to him, and by consent the cause was heard and determined by the circuit judge, without a jury, who rendered judgment in favor of Miller against Cherry for $903.74, from which Cherry has appealed to this court.

Two defenses are relied upon by Cherry as entitling him to a reversal of the judgment and discharge from liability as an endorser, for accommodation, of said note:

First. It is alleged that in consideration of certain bonds deposited as collateral security, an extension of the time of payment was given.

Second. Because Miller had not sold the bonds, which were deposited as collaterals upon the execution of the note, until long after its maturity, the said bonds in the mean time having greatly depreciated.

The money which was loaned and for which the note was given, was deposited in bank, and the cashier negotiated the loan for Miller. The bonds were left in the hands of said cashier with the note, on which was endorsed, after describing the bonds, "With authority to sell within named collaterals at public or private sale, at his discretion. H. A Partee." Cherry endorsed the note for Partee with knowledge of the deposit of the bonds as collateral security.

The note fell due the 28th of May, 1874, and still remained in bank with the cashier, who was urged to collect it by Miller. In answer to a note written him by Miller, the cashier wrote him, June 11, 1875, that he had just had an interview with Partee, who said he was unable to pay then, but would be able

to pay the note " in the fall," and that he had in the meantime deposited two other bonds as additional security.

No answer to this letter was sent by Miller, who states in his deposition that he knew nothing of the second deposit of bonds, until he received the cashier's letter; that he never proposed or authorized any extension of time, and the note was left in bank to be collected as soon as it could be done; that Partee never proposed to deposit the bonds for the consideration of an extension of time.

From Miller's testimony, which is wholly uncontradicted, it is manifest that there was no contract or agreement by Miller to postpone the time of payment of the note for any consideration. He did in fact wait, and forbear legal proceedings for some time after the maturity of the note, but there is no evidence of an agreement for delay for a sufficient consideration.

The mere fact of an additional voluntary deposit of bonds as further security for the debt, was a benefit rather than injury to the endorser, and did not bind the creditor not to. sue.

To release the surety or accommodation endorser, the agreement for delay must be for a definite time, upon sufficient consideration and binding, and without the consent of the surety or endorser. In this case there is no such agreement.

Nor do we think that Miller's failure to sell the bonds deposited, at maturity of the note, renders him liable to account to the surety for any depreciation of them from that time until they were in fact sold. ·

The endorser made no demand or request that they should be sold. These bonds were held and safely kept, as securities for the debt. They were not lost, but preserved until finally sold, and all the proceeds of their sale applied towards the extinguishment of the debt. Neither the principal debtor nor his surety at any time demanded a sale of any one of the bonds, and a creditor cannot be held liable for depreciation in their value.

If the creditor undertakes to do any act, which he omits to do, as he had agreed, and loss results, he would be held liable; or, if having a security or pledge for a debt, he voluntarily releases or surrenders it, to the prejudice of a surety, he would thereby discharge the surety. But mere omission to act, or passive negligence of the creditor, the security himself being inactive, will not discharge such surety: 1 Sto. Eq., sec. 501; 29 Ind., 347; 2 Lea, 39; 52 Mi., 251; 48 Ill., 345; 27 Gratt., 749.

The judgment of the court below is correct and will be affirmed.