## HUNTER ET AL. *v.* FIRST NATIONAL BANK OF FORT WAYNE ET AL.

[No. 21,188. Filed March 19, 1909.]

1. PLEADING.— *Cross-Complaint.*— *Conversion.*— *Bailment.*—*Stock.* —*Reissue in Pledgee's Name.*—*Banks.*—*Evidence.*—A cross-complaint, by the surety on a note, for the conversion of certain shares of stock pledged by the corporation principal of the note, as collateral for the payment thereof, showing that the pledgor was insolvent, that the shares were reissued and placed in the individual name of the president of the pledgee bank, but failing to show that such surety was deprived thereof, or that such shares were converted to the use of another, is insufficient, evidence being admissible to show that such president took and held such title for the benefit of the bank, and the maker and sureties on the note. p. 65.

2. PLEADING.— *Cross-Complaint.*— *Bailment.*— *Pledges.*—*Depreciation.*—A cross-complaint by a surety on a note, asking that the amount of depreciation of certain pledged shares of stock be set off against such note is bad, where it fails to show that the pledgee had authority to market such shares, or that such pledgee was ever requested to sell same. p. 66.

3. PRINCIPAL AND SURETY.—*Affirmative Action by Surety.*—*Payment.*—Ordinarily a surety cannot institute affirmative proceedings to protect his interests until payment of the obligation. p. 67.

4. PLEADING.— *Cross-Complaint.*— *Subject-Matter.*— *Notes.*— *Receivers.*—*Unpaid Stock Subscriptions.*—In an action on a note, a

surety cannot, by cross-complaint, ask for a receiver for the corporation principal, upon a showing that prior to the execution of such note, subscriptions of stock were taken, which had not been paid for, and which should be collected and credited on the note, such matters not being germane to the subject-matter of the action. p. 68.

5. APPEAL.—*Supply of Omitted Record.—Certiorari.—*Where the transcript, on appeal, omitted the exhibit from the cross-complaint, but it was supplied on a writ of *certiorari,* the defect is cured. p. 68.

6. PRINCIPAL AND SURETY.— *Notes.— Release of One Surety by Payee.—Effect.—*Where two sureties on a note agree with their principal, in the presence of the payee, to execute such note and any renewals thereof desired by the principal, and, without the knowledge of one surety the other refused to sign a renewal note, the payee accepting same with the one surety, a memorandum attached to the next renewal note, by such surety who had received notice, in the meantime, of the failure of the other surety to sign, requiring the payee, to whom such surety sent the note, to obtain the signature of the other surety thereon, obligates the payee to obtain such signature; otherwise there is no execution of the note. p. 73.

7. BILLS AND NOTES.—*Sureties.—Failure of One to Sign.—Notice.—* Where two sureties on a note agree with their principal, in the presence of the payee, to execute any renewals thereof desired, and the payee receives a note executed by one only, the other having no notice thereof, such surety, upon receipt of notice thereof, is not required to take any affirmative action thereon. p. 73.

8. PLEADING.— *Answer.— Non est Factum.— Notes.— Conditional Delivery.—Sureties.—Release.—*Under a plea of *non est factum* a surety on a note can show that his delivery of such note to the payee was on the condition that another designated surety should also sign same. p. 74.

9. EVIDENCE.—*Oral.—Contradicting Written Instruments.—Conditional Delivery of Notes.—*Evidence is not ordinarily admissible to contradict a written instrument, but is admissible, as between the parties and others with notice, to show a conditional delivery of a note, where the plea denies the execution thereof. p. 75.

10. PLEADING.— *Answer.— Non est Factum.— Notes.— Conditional Delivery.—*Where a note is delivered under a condition which requires the performance of some other act to render it effective, and the performance of the condition fails, a plea of *non est factum* is the proper answer. p. 76.

11. EVIDENCE.—*Conditional Delivery of Note.—*The conditional delivery of a note may be shown by express words, or by circumstances from which delivery may be inferred. p. 77.

12. BILLS AND NOTES.—*Principal and Surety.*—*Payees.*—*Relationship.*—Where two persons originally owing a debt become sureties on a note for a third person who becomes the principal in a note for the payment of such debt, the payee receiving such note with full notice of such facts, the parties' rights are fixed according to such new relation. p. 77.

From Superor Court of Allen County; *Samuel E. Cook,* Special Judge.

Action by the First National Bank of Fort Wayne, Indiana, against Lewis C. Hunter and others. From a judgment for plaintiff, and for cross-defendant Citizens Trust Company, Hunter and others appeal. *Affirmed in part. Reversed in part.*

*W. G. Colerick* and *Guy Colerick,* for appellants.
*Vesey & Vesey* and *Heaton & Yaple,* for appellees.

MONTGOMERY, J.—Appellee First National Bank brought this action upon a promissory note for $9,500, executed by the National Duplicating Book Manufacturing Company as principal, and Lewis C. Hunter, Charles E. Archer and Adam H. Bittinger as sureties, and to set aside an alleged fraudulent conveyance to Cora M. Hunter. Appellee Citizens Trust Company was joined as a defendant because of its interest in certain collaterals pledged to secure the note, and upon application the receiver of the National Duplicating Book Manufacturing Company was also admitted to appear and defend. The Citizens Trust Company filed a cross-complaint against Archer and Hunter upon a note for $3,200. The court made a special finding of facts, upon which conclusions of law were stated in favor of the bank, upon the complaint, and in favor of the trust company upon its cross-complaint, and rendered judgment accordingly.

Appellant Hunter filed a cross-complaint in three paragraphs, to each of which the demurrer of the bank on the ground of insufficient facts was sustained, and these rulings have been assigned as errors for the reversal of the judgment in favor of the bank.

Hunter *v.* First Nat. Bank—172 Ind. 62.

The first paragraph of Hunter's cross-complaint alleged, in substance, that the National Duplicating Book Manufacturing Company was principal, and the other makers were sureties on the note in suit; that the predecessor of the book manufacturing company, by another corporate name, borrowed various sums of money from the White National Bank of Ft. Wayne, and, at the instance of its sureties, pledged as collateral security for such loans certain shares of stock in the Merchants Sales Book Company of Chicago, to the amount of $29,000, the actual value of which was in excess of the debts thereby secured; that the debtor corporation then was and ever since has been insolvent, and all of its notes and loans were consolidated and merged in the note for $9,500; that the White National Bank, with all of its assets, was merged in the First National Bank, and said note was renewed by the National Duplicating Book Manufacturing Company, and extended from time to time; that while said note and the collaterals securing the same were in the hands of the White National Bank, the president of said bank caused the certificates of stock so held as collateral to be surrendered and cancelled, and new certificates to be issued in lieu thereof in the individual name of the president of said bank, in whose name they still stand. This transfer is characterized as a conversion, and it is averred that the stock so converted was at the time equal in value to the amount of indebtedness owing to the bank, and it was asked that the value of such stock, at the time of its alleged conversion, be credited upon the note in suit, and upon which Hunter is a surety, either in full or in partial satisfaction of the same.

The suretyship of Hunter is otherwise shown, and the sufficiency of this paragraph is to be determined upon the manifest theory of the pleader that a wrongful conversion of the collaterals is charged. The allegations of this paragraph do not show that appellant Hunter and the other sureties have been deprived of the benefit of

this collateral, or that it has been converted to the use of another, but make the fact appear that White, the president, still holds the stock in trust to secure the payment of this note.    His action in causing a transfer of the stock to be made from the name of the insolvent pledgor was a proper and prudent business procedure to remove it from liability to seizure and sale on execution or attachment at the suit of some creditor in the state of Illinois.    The fact may be shown that in taking the assignment of stock in his own name the president was acting officially, and the title thereto was in reality in the bank, and held for the use and benefit of the bank and of the makers of the note secured.    Colebrooke, Collat. Securities (2d ed.), §288; 1 Morse, Banks and Banking (3d ed.), §144; *Erwin Lane Paper Co.* v. *Farmers Nat. Bank* (1892), 130 Ind. 367, 30 Am. St. 246; *Nave* v. *Hadley* (1881), 74 Ind. 155; *Day* v. *Holmes* (1869), 103 Mass. 306; *Rich* v. *Boyce* (1873), 39 Md. 314; *Heath* v. *Griswold* (1881), 18 Blatch. 555.

The second paragraph of Hunter's cross-complaint contained the same general allegations as the first, except that no conversion was charged, but it was averred that when it was pledged the corporate stock was of greater value than the debt thereby secured, and that the bank failed and neglected to dispose of the same, but, continuing to hold such stock, suffered it to depreciate until now it is of less value than the amount due on the note, and it was asked that the amount of such depreciation be ascertained and entered as a credit upon said note.    This paragraph was not founded upon the stipulations of any special contract between the parties, and the agreement upon which such collateral was held contained no power to sell, or provision with respect to the sale of, such stock.    It is not alleged that the bank was ever requested to procure authority of court to sell, or otherwise to sell or dispose of such collateral.    In the absence of some special agreement or action the holder of collateral securities is not obliged to watch the

market and sell at the highest price at his peril, but may remain wholly passive, although he may have notice of a probable decline or depreciation in the value of such collaterals. *Wasson* v. *Hodshire* (1886), 108 Ind. 26; *Vance* v. *English* (1881), 78 Ind. 80; *Philbrooks* v. *McEwen* (1868), 29 Ind. 347; *Rozet* v. *McClellan* (1868), 48 Ill. 345, 95 Am. Dec. 551; *Brick* v. *Freehold Nat. Banking Co.* (1875), 37 N. J. L. 307; *Cherry* v. *Miller* (1881), 7 Lea (Tenn.) 305; *Whitin* v. *Paul* (1880), 13 R. I. 40; *Henry Wood's Sons Co.* v. *Schaefer* (1899), 173 Mass. 443, 53 N. E. 881, 73 Am. St. 305; Colebrooke, Collat. Securities (2d ed.), §118; Stearns, Suretyship, §99.

The third paragraph alleged many of the same general facts, and averred that the stock pledged as collateral represented the purchase price of the plant and property of the National Duplicating Book Manufacturing Company, the principal on the note, which property had been sold to the Merchants Sales Book Company of Chicago, and said pledged stock constituted all of the assets of the company, except the proceeds of the sale of certain lots, and some rental money, now in the hands of defendant Bittinger as trustee, and that certain persons had subscribed for, and on payment of less than par value had received, stock in said debtor corporation, prior to the execution of the note in suit. The prayer was for the appointment of a receiver to take possession and control of all assets, to require an accounting from Bittinger, and to enforce the collection of the balance due on subscription for such shares of stock.

It appears that Hunter has not paid the debt in question, and ordinarily a surety has no right to initiate affirmative action until he shall have paid the debt for which he is bound as surety. *Stearns* v. *Irwin* (1878), 62 Ind. 558; *Covey* v. *Neff* (1878), 63 Ind. 391.

A cross-complaint must in all cases be germane to the subject-matter of the original complaint, and the relief sought must be connected with the matters involved in the

principal action, or in some way depend upon the con-
4.  tract or transaction upon which the original action
was founded.  A party defendant, notwithstanding
the liberal rules of pleading and practice, may not by cross-
complaint bring in new parties in order to litigate matters
wholly between themselves, and which cannot affect the
right of the plaintiff to recover upon his complaint.  *Fischer
v. Holmes* (1890), 123, Ind. 525; *Bennett* v. *Mattingly*
(1887), 110 Ind. 197; *Scobey* v. *Finton* (1872), 39 Ind. 275;
*Manning* v. *Gasharie* (1866), 27 Ind. 399; *Frear* v. *Bryan*
(1859), 12 Ind. 343; *Conklin* v. *Bowman* (1858), 11 Ind.
254; *Heaton* v. *Lynch* (1894), 11 Ind. App. 408.  This para-
graph of cross-complaint is not germane, and furthermore
the facts averred do not entitle appellant Hunter to the re-
lief demanded.

We find no error in connection with the proceedings and
judgment of the First National Bank.

Appellant Hunter has assigned errors upon the overruling
of his demurrer to the cross-complaint of the Citizens Trust
Company, and upon the conclusions of law stated in favor
of said trust company.

The insufficiency of the trust company's cross-complaint
was urged because of the absence of exhibit A, filed there-
.    with, from the record, but this omission has been sup-
5.  plied by a writ of *certiorari*, and it is clear that this
cross-complaint is sufficient.

The note upon which this cross-complaint was founded
was signed by Charles E. Archer and by appellant Hunter.
Hunter's answer was a special plea of *non est factum*, the
substance of which was that when the original note, of which
the one in suit is a renewal, was given to the trust company
the makers thereof agreed, in the presence and with the
knowledge of the secretary of the trust company, that the
note should be signed by Archer as principal and by Hunter
and Harry Sprague as his sureties; that all extensions and

renewals thereof should be executed in the same way until the debt was finally paid; that the trust company, in violation of this agreement, and without Hunter's consent, accepted the note sued on in renewal of a former note, without Sprague's signature thereto as a cosurety.

The findings of the court relating to this question were as follows: "(11) That in December, 1900, said Charles E. Archer, Lewis C. Hunter, defendants herein, and Harry Sprague and Edwin E. Vernon were stockholders of said corporation, known as the Archer-Sprague-Vernon Company, as mentioned in finding number one; that during said month said Archer, Hunter and Sprague purchased of said Vernon his stock in said company, agreeing to pay him therefor the sum of $3,500; that, for the purpose of paying said purchase money, said Archer, Hunter and Sprague borrowed the sum of $1,750 from the cross-complainant, the Citizens Trust Company, and a like sum from the Allen County Loan & Savings Association; that, thereupon, said Archer, Hunter and Sprague, as joint and several makers, executed two notes of $1,750 each, one to said trust company and the other to said association; that said notes were renewed in the same manner and form until June 9, 1902, when said Archer and Hunter purchased the stock of said Sprague for the sum of $3,000 (as well as the further sum of $2,000, which is not involved herein), and said Archer and Hunter also agreed to assume said Sprague's one-third part of said debt of $3,500 due to said trust company and said savings association; that it was then and there verbally agreed by and between said Archer, Hunter and Sprague that said Sprague would sign as surety any and all notes said Archer and Hunter would be required to execute in paying said $3,000 and said other two notes of $1,750 each, and that, pursuant to said agreement, on June 9, 1902, said Archer and Hunter, at the instance and request of said Sprague, executed to Millie Van Roy a note for said $3,000 of said purchase money, and that said Sprague signed the same as surety for said Archer and

Hunter; that afterwards said trust company became the owner of said $1,750 note, so held by said savings association; that said Sprague had become indebted to said trust company for a loan of $3,000, and had executed his individual note to said company for the same, and had also deposited said Van Roy note of $3,000, as well as certain stock, as collateral security therefor, and afterwards said Archer and Hunter, with said Sprague as surety, executed a note for $3,000 to said trust company in lieu of said Van Roy note, and the latter, as well as the individual note of said . Sprague, was surrendered to him, and the Archer and Hunter note accepted as payment of said two old notes.

"(12)   That on July 25, 1904, said Hunter, then desiring to go to the state of California, met with said Archer and Sprague at the office of said Citizens Trust Company, for the purpose of dividing said debt between said Archer and Hunter; that said debt then amounted to the sum of $6,500; that it was then and there verbally agreed between said Archer and Hunter that said Archer should assume the payment of $3,250, being the one-half of said whole debt, and that said Hunter should assume the payment of the other half, $3,250, and that said division was made in the presence of and with the knowledge and consent of Ernest W. Cook, the secretary and manager of said trust company; that it was further verbally agreed by and between said Archer, Hunter and Sprague that said Hunter and Sprague would sign said Archer's note and renewals thereof, from time to time for his half of said debt, as his sureties, and said Archer and Sprague would sign Hunter's note and the renewals thereof for his half, as his sureties, and that this agreement was also heard by and known to said Cook; that pursuant to said agreement said Archer, as principal, then and there executed to said Citizens Trust Company his note for $3,250 due in four months from date, and that said Hunter and Sprague executed the same as his sureties, and said Citizens Trust Company accepted said note in said form in payment

of the one-half of said old notes it had held against said Archer and Hunter; that said Hunter then and there paid to said trust company the sum of $1,900 in cash on his half of said debt, and executed his own note to said trust company for the balance of $1,350, with said Archer and Sprague as his sureties, and afterwards said Hunter paid said note for $1,350.

" (13) That said Hunter, soon after July 25, 1904, started for the state of California, where he remained, and returned for a while, as set out in finding number three; that said note of $3,250 was renewed by said Archer from time to time as it became due, until December, 1905, the date of the one described in the cross-complaint of the Citizens Trust Company, and on which its action is based, and said renewals were forwarded by said Cook to said Hunter in California, who executed each as surety for said Archer, and said Hunter then delivered each to said Cook for said trust company, and the latter accepted each one as payment for the one preceding it; that in the meantime said Archer paid the sum of $50 on said note; that prior to July 25, 1904, and also in the fall of 1905, but a short time prior to the execution of the note on which the action of said trust company is based, said Cook informed Hunter that said Sprague had refused to and had not signed said renewal notes, and said Hunter then and thereafter knew and understood that said trust company was and had been accepting said renewal notes as payment of said old notes, with his name and that of said Archer thereon, and without the name of said Sprague thereon as surety for said Archer, and as cosurety with him; that some time in the month of December, 1905, said Archer executed the renewal note involved in this action, and then said Cook forwarded the same to said Hunter in California, who signed the same as surety for said Archer, and he then made a request thereon with a lead pencil as follows: 'Get H. Sprague on this as well;' that said Hunter, with full knowledge that said Sprague had refused to and had not

signed the former renewal note, delivered said note to said Cook, who was then and had been acting as the agent of said trust company in obtaining the renewal of said several notes; that when said Cook so received said note, he or another agent of said trust company presented the same to said Sprague for signature, but the latter again refused to and did not sign said note, and thereupon, said trust company surrendered said preceding old note to said Archer, and said new note was accepted by said trust company as payment of said preceding one.''

The conclusions of law stated in favor of the trust company were as follows: '' (6) That as to the issues on the cross-complaint of said Citizens Trust Company against said Archer and Hunter, the law is with the cross-complainant. (7) That said request of said Hunter as to said Sprague's signing said note, as set out in finding number thirteen, was not and is not a condition precedent attached to the delivery of said note. (8) That said Ernest W. Cook, in obtaining the renewal of said notes, including the one described in said cross-complaint, was the agent of said trust company, and not the agent of said Hunter or said Archer. (9) That the delivery of said note, as described in finding number thirteen, by said Hunter to said Cook as the agent of said trust company was not in escrow, but was an absolute delivery to said trust company, and binding on said Hunter. (10) That said trust company is entitled to recover a personal judgment on its cross-complaint against said Charles E. Archer and Lewis C. Hunter, in the sum of $3,695.46, with costs.''

These conclusions of law are supported by appellees' counsel, upon the grounds indicated by the court—that the pencil notation on the note did not embody a condition precedent, but only a request; that Cook was the agent of the payee and could not become agent for Hunter, and a delivery of the note to him, accompanied by a mere request, constituted an absolute delivery to the trust company.

The pencil memorandum upon the note, taken alone, might not amount to anything more than a request that the trust company obtain the name of Sprague thereto, but it

6. cannot be thus separated from the agreement to which it related. This agreement was that Archer's note for $3,250 was to be executed by both Hunter and Sprague as his sureties, and all renewals thereof were to be executed in the same manner until final payment should be made. The agreement was made in the presence of Cook as secretary of the trust company, and was acted upon by it; and, taken in connection with these facts, this notation was in effect unequivocal notice to appellee that Hunter was insisting that Sprague should not be released from his obligations as such surety. This oral agreement embodied the condition and a part of the consideration upon which the original note and its renewals were to be executed. This arrangement, having been brought to the knowledge of the trust company as payee of the note, could not be disregarded by it without the consent of the other parties to be affected. A release of either Hunter or Sprague as cosureties, without the consent of the other, would discharge both from liability. It appears from the findings that Sprague had not signed certain renewal notes taken prior to the one in suit, but that fact was unknown to Hunter until a short time before the signing of the note in question. It was not incumbent upon Hunter, when advised of the fact, to take any action, as there

7. was no affirmative relief which he could appropriately seek. The court did not find that he waived his right to have the name of Sprague attached to any renewal note as his cosurety; but, on the contrary, it is found that when the note for renewal was presented next after notice of non-execution by Sprague, he kept faith on his part, and signed as surety, but plainly signified his insistence that Sprague should do likewise. Appellee trust company requested Sprague to sign, but on his refusal, accepted the paper with

the signature of Hunter alone as surety, and in so doing attempted to give force and effect to an instrument not yet fully executed.

Appellee trust company, however, confidently asserts that this parol agreement is not available as a defense, and contends that the delivery of a note to the agent is a delivery to his principal, and a delivery in escrow can be made only to a stranger, but cannot be made to the payee, and if made to the payee, no matter what may be the form of words the delivery is absolute. It is therefore argued that the mailing of the signed note by Hunter to Cook as secretary of the payee constituted a full delivery, and an unqualified execution of the instrument, citing the following cases: *Fowley* v. *Cowgill* (1838), 5 Blackf. 18, 32 Am. Dec. 49; *State, ex rel.,* v. *Chrisman* (1850), 2 Ind. *126; *Madison, etc., Plank Road Co.* v. *Stevens* (1857), 10 Ind. 1; *Deardorff* v. *Foresman* (1865), 24 Ind. 481; *Roche* v. *Roanoke Classical Seminary* (1877), 56 Ind. 198; *Steward* v. *Anderson* (1877), 59 Ind. 375; *Clanin* v. *Esterly, etc., Machine Co.* (1889), 118 Ind. 372, 3 L. R. A. 863.

It will be found, upon an examination of these cases, that the answers therein filed and considered were in the nature of confession and avoidance, admitting execution of the instrument and alleging facts in contradiction of its terms or legal effect, and in no case pleas of *non est factum.* In the case of *State, ex rel.,* v. *Chrisman, supra,* the court said: "This plea admits the signature to the bond, and does not deny that the same was delivered to the obligee. When so signed and delivered it became absolute." In the case of *Clanin* v. *Esterly, etc., Machine Co., supra,* Judge Mitchell recognized the distinction which must be made, in the following sentence: "While it is competent to prove, under proper issues, that a note never was delivered, evidence is not admissible to prove that it was delivered to the payee, who had parted with the consideration, as an escrow, or under

any agreement that the maker was not to be bound according to the terms of the note.''

The issue in the present case was raised by an answer of *non est factum.* Under this issue appellant Hunter did not seek to contradict or vary the terms of the written instrument, but only to show that in its present form its delivery was not authorized, and the note accordingly not fully executed. The terms of the body of the note were precisely what both the payee and the makers intended them to be when the note should finally go into effect, but it was not to be delivered and become a binding obligation and operate as a payment of the preceding note until signed by the two sureties. These facts appellant had a right to show under his plea of *non est factum.* The governing principle is concisely stated in the case of *Benton* v. *Martin* (1873), 52 N. Y. 570, in the following language: ''Instruments not under seal may be delivered to the one to whom upon their face they are made payable, or who by their terms is entitled to some interest or benefit under them, upon conditions the observance of which is essential to their validity. And the annexing of such conditions to the delivery is not an oral contradiction of the written obligation, though negotiable, as between the parties to it, or others having notice. It needs a delivery to make the obligation operative at all, and the effect of the delivery and the extent of the operation of the instrument may be limited by the conditions with which the delivery is made.''

The distinction in point of law, between the conflicting contentions is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to show

9. that there is not an agreement at all is admissible. A promissory note, like any other written instrument has no legal inception or valid existence until it has been delivered in accordance with the purpose and intention of the parties, and in support of a plea denying its execution it is

competent to show, as between the parties to it or others
having notice, that the manual delivery of the instrument
to the payee was accompanied by a condition which was
never fulfilled. *Swope* v. *Forney* (1861), 17 Ind. 385;
*Whitcomb* v. *Miller* (1883), 90 Ind. 384; *Deering Harvester
Co.* v. *Peugh* (1897), 17 Ind. App. 400; *Burke* v. *Dulaney*
(1894), 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698; *Hop-
per* v. *Eiland* (1852), 21 Ala. 714; *Graham* v. *Remmel*
(1905), 76 Ark. 140, 88 S. W. 899; *McFarland* v. *Sikes*
(1886), 54 Conn. 250, 7 Atl. 408, 1 Am. St. 111; *Belleville
Sav. Bank* v. *Bornman* (1888), 124 Ill. 200, 16 N. E. 210;
*Central Sav. Bank* v. *O'Connor* (1903), 132 Mich. 578, 94
N. W. 11, 102 Am. St. 433; *Ricketts* v. *Pendleton*
(1859), 14 Md. 320; *Watkins* v. *Bowers* (1875), 119 Mass.
383; *Smith* v. *Mussetter* (1894), 58 Minn. 159, 59 N. W.
995; *Higgins* v. *Ridgway* (1897), 153 N. Y. 130, 47 N. E.
32; *Sweet* v. *Stevens* (1863), 7 R. I. 375; *McCormick, etc.,
Machine Co.* v. *Faulkner* (1895), 7 S. Dak. 363, 64 N. W.
163, 58 Am. St. 839; *Wheeler & Wilson Mfg. Co.* v. *Briggs*
(1891), (Tex.), 18 S. W. 555; *Alexander* v. *Wilkes* (1883),
11 Lea (Tenn.) 221; *Harris* v. *Harris* (1873), 23 Gratt.
(Va.) 737, 778; *Elwell* v. *Turney* (1905), 39 Wash. 615, 81
Pac. 1047; Johnson, Bills and Notes, p. 151, note; Norton,
Bills and Notes (3d ed.), p. 70.

The courts have not all required such defense to be set up
by answer of *non est factum,* but, in our opinion, such a plea
is the appropriate way to present the issue. In the
well-considered case of *Alexander* v. *Wilkes, supra,*
the supreme court of Tennessee tersely states our view
of the practice as follows: "If the condition be such as to
prevent the instrument's becoming the act and deed of the
maker until the contingency happen, the remedy is at law by
special plea of *non est factum.* And if the condition be such
as to make the failure to comply with it a fraud upon the
makers, the remedy is either at law or in equity, the courts

having concurrent jurisdiction, although less embarrassed in a court of equity.''

A delivery may be conditional without the use of express words to that effect at the time. That conclusion may be drawn from all the circumstances which properly 11. form a part of the entire transaction, whether in point of time they precede or accompany the delivery. *Wilson* v. *Powers* (1881), 131 Mass. 539.

It is suggested that in fact Hunter and Archer were both bound as principals for the payment of the indebtedness evidenced by this note, but whatever may once have 12. been the precise relation of the several parties towards each other, their relation in the future was fixed by specific agreement, and the court has found ''that pursuant to said agreement said Archer, as principal, then and there executed to said Citizens Trust Company his note for $3,250 due in four months from date, and that said Hunter and Sprague executed the same as his sureties.''

Appellee Citizens Trust Company, payee and holder of the original note for $3,250, with knowledge of the relation of the makers thereof, and that renewals were to be executed by the same parties in like manner, having accepted the note in suit without the signature of Sprague as a surety thereon, over the objection of Hunter his cosurety on the original note, cannot enforce the paper against Hunter. It follows that the court erred in stating conclusions of law in favor of the Citizens Trust Company as against appellant Hunter.

The judgment in favor of the First National Bank is affirmed, and the judgment in favor of the Citizens Trust Company upon its cross-complaint is reversed as to appellant Hunter, with directions to restate conclusions of law in favor of appellant Hunter upon the issues joined on cross-complaint, and to render judgment accordingly.