STATE EX REL. PUBLIC SERVICE COMPANY OF INDIANA, INC. *v.* PIKE CIRCUIT COURT, NIXON, JUDGE.

[No. 30,367. Filed August 21, 1963. Rehearing denied November 18, 1963.]

482

*Paul G. Jasper, Charles W. Campbell,* both of Plainfield, *John E. Hurt,* of Martinsville, and *Carl M. Gray,* of Petersburg, for relator.

*Ralph P. Zoercher,* of Tell City, *Parr, Parr, Parr & Richey,* of Lebanon, *Cadick, Burns, Duck & Neighbours,* of Indianapolis, and *John K. Chappell,* of Petersburg, for respondents.

*Lester Nixon, pro se.*

MYERS, C. J.—This is an original action presented to us by Public Service Company of Indiana, Inc., as relator, against the Pike Circuit Court and the Hon. Lester Nixon as the Judge thereof. A temporary writ prohibiting the respondents from issuing any orders, judgments or decrees of any character, or proceeding further, in a certain cause pending in the Pike Circuit Court against this relator, was asked. We ordered respondents to show cause why a permanent writ should not be issued. This has been done in a response filed herein.

Relator is a corporation organized and existing under the laws of the State of Indiana for the main purpose of generating, transmitting and selling electric energy as a public utility. As such, it is the owner of franchises, permits and licenses authorizing it to sell electric energy, both for resale and at retail in the State of Indiana. It is subject to regulation and control by established regulatory boards and commissions, in

particular the Public Service Commission of Indiana (hereinafter called "Commission"). Its business is carried on in sixty-nine counties in the State of Indiana, including Pike County.

By means of five electric generating stations owned and operated by relator located in different parts of the state, it is able to sell electric energy to more than 382,000 customers, including residents of municipalities and rural areas, Indiana municipalities, unincorporated communities and rural electric membership corporations organized under the Indiana Rural Electric Membership Corporation Act of 1935 as amended (hereinafter referred to as "REMCs"). As of December 31, 1961, its investment in its business as an electric public utility system was in excess of $525,843,000.

There are four other electric transmission systems owned and operated in the State of Indiana by Indiana corporations, viz: Northern Indiana Public Service Company, Indiana & Michigan Electric Company, Indianapolis Power & Light Company (IPALCO), and Southern Indiana Gas and Electric Company. Relator's system is interconnected with these systems, as well as with certain other systems doing business in Ohio and Kentucky.

In 1935, a corporation named Indiana Statewide Rural Electric Membership Corporation (hereinafter called "Statewide") filed with the Commission for approval proposed articles of incorporation and a request for the issuance to it of a certificate of public convenience and necessity for the operation of this organization pursuant to the provisions of the Indiana REMC Act of 1935. It was stated that the purpose of the corporation was to make electric energy available to the inhabitants of rural areas of Indiana at the lowest cost without pecuniary profit to itself. It is alleged that it

did not request or accept any franchise, right or privilege or undertake to generate and transmit electric energy for local district REMCs. The Commission approved Statewide's articles of incorporation on July 12, 1935.

In 1949, a corporation entitled "Hoosier Cooperative Energy, Inc." (hereinafter called "Hoosier Co-op."), was organized under the Indiana General Not for Profit Corporation Act. In 1957, this corporation took options on two tracts of real estate on White River in Pike County, Indiana, for the announced purpose of constructing a steam generating plant. Late in the year, it announced the purchase of that land. This property was immediately adjacent downstream to real estate which had been purchased by IPALCO in 1951 as the site for a new power plant to be constructed by it. Hoosier Co-op. meanwhile applied to the Rural Electrification Administration for a loan with which to finance the construction of its generating station together with related facilities.

In March, 1962, there was information to the effect that Hoosier Co-op. was going to transfer its interest in the real estate purchased to Statewide, which was going to proceed with the construction of a steam generator plant thereon. Statewide claimed to have as "members," fifteen REMCs located in Southern Indiana which relator claims are "customers" of it.

In December, 1961, Hoosier Co-op. sought by petition filed with the Public Service Commission to obtain a certificate of public convenience and necessity to allow Hoosier Co-op. to construct and operate an electric generating station on the land purchased by Hoosier Co-op., and to obtain permission to issue promissory notes in an amount not in excess of $60,225,000 payable to the United States of America for a loan to be

issued by United States Department of Agriculture to Hoosier Co-op., together with a mortgage on the property as security therefor.

The five electric public utility companies, including this relator, filed requests for leave to intervene in this cause for the purpose of opposing the granting and issuance by the Commission of any certificate of public convenience and necessity to Hoosier Co-op. for this construction. These petitions were accepted for filing by the Commission, which entered an order acknowledging their filing and directing Hoosier Co-op. to file responsive pleadings. This was not done. On April 24, 1962, Hoosier Co-op. filed a motion to dismiss with the Commission, which was sustained without prejudice over the objection of the relator. After the dismissal, it is alleged that Statewide prevailed upon Hoosier Co-op. to assign to Statewide the loan commitment, and that Hoosier Co-op.'s organization was assimilated into Statewide's organization as a "division" of Statewide.

On May 18, 1962, IPALCO filed an injunction suit against Statewide and Hoosier Co-op. in the Pike Circuit Court asking that the defendants be enjoined from interfering with the use of the plant site of IPALCO and to declare certain rights in the waters of White River.

On June 1, 1962, relator filed an injunction suit against Statewide in the Marion Circuit Court, praying that Statewide be permanently enjoined from engaging in the business of generating, transmitting and selling electric energy as a public utility within the State of Indiana; from constructing and operating any generating plant and related facilities; from issuing any notes or other evidences of indebtedness as a public utility until such time as Statewide obtained a certi-

ficate of public convenience and necessity from the State to act as a public utility.

On June 15, 1962, Statewide filed its special appearance in the Marion Circuit Court for the purpose of filing a plea in abatement. It so filed such plea together with a motion for change of venue which was granted. On November 12, 1962, the cause was venued to the Hancock Circuit Court, Hancock County, Indiana.

On June 20, 1962, Statewide filed its petition in the Pike Circuit Court to have relator and the other four public utilities made parties to the IPALCO suit. The court granted such motion without hearing and ordered summons issued to relator and the others. Relator filed its motion to quash the summons and set aside the order making relator a party to the suit. On June 29, 1962, Statewide filed in the Pike Circuit Court what is designated as a cross-complaint and petition for realignment of parties. The motion to quash and set aside the order was overruled, and the Pike Circuit Court ordered defendants to answer a plea in abatement filed by relator. On February 4, 1963, the court overruled the answer in abatement and ordered relator to plead to defendants' cross-complaint. Whereupon, relator filed its petition for a temporary writ of prohibition in this court, asking that we prohibit the Pike Circuit Court from proceeding further against this relator.

The cross-complaint and petition for realignment of parties filed by Statewide allege matters and raise issues previously presented to the Marion Circuit Court by relator's complaint therein. The prayer requests that the court align relator and the others as plaintiffs, that Statewide and Hoosier Co-op. be aligned as defendants, and that the plaintiffs be ruled to plead by a certain date.

It is relator's contention that: (1) The Marion Circuit Court has exclusive jurisdiction over the issues raised by the cross-complaint filed in the Pike Circuit Court; (2) the issues raised in the cross-complaint cannot relate back to the original complaint filed by IPALCO on May 18, 1962, so as to make relator a party from the commencement of the suit; thus the action started against relator when the cross-complaint was filed, which was nineteen days after the Marion Circuit Court acquired jurisdiction; (3) relator cannot be brought into a lawsuit by Statewide merely for the purpose of litigating other issues which it may have with the relator.

Respondents argue that the matter of adding proper parties to a lawsuit is within the discretion of the trial court, pursuant to statute (Burns' Ind. Stat., §2-222, 1946 Replacement), and writs of prohibition cannot be used to control such discretion; that in the controversy between IPALCO and Statewide, the other four big, privately-owned utilities had an "actual, existing, *common interest,* which had been maintained for some time prior to May 18, 1962" (our emphasis); that the construction of a generating system by Statewide (which IPALCO is trying to enjoin) would have an adverse effect on the economy of operation of the other four utilities; that this is apparent because of their various interconnection and service agreements among each other and their avowed reasons stated in their petitions for leave to intervene in the proceedings filed by Statewide and Hoosier Co-op. before the Public Service Commission; that the Pike County suit brought by IPALCO was only one phase of the controversy existing between Statewide and the other four utilities; that the Pike Circuit Court had jurisdiction to the exclusion of the jurisdiction of all other courts of coordinate

jurisdiction to determine the entire controversy and so to bring in all other parties it deemed necessary to settle that controversy; that otherwise there could be a multiplicity of lawsuits with each utility filing different suits in different courts on different phases of the controversy so as to harass and litigate with Statewide.

While we pay tribute to respondents' sincere inclination to undertake to settle a problem filled with vast economic consequences to the people and the utility business of this state, yet we cannot overlook the fundamental principles and rules of law by which litigants and courts of law must abide.

In examining the IPALCO complaint filed May 18, 1962, in the respondent court, we find that the first paragraph is an action to prevent the construction of a generating plant and facilities on property located in Pike County on White River by Statewide and Hoosier Co-op. adjacent to property previously purchased by IPALCO for the alleged same purpose. IPALCO claims a prior right to construct such a generating plant on its site and asks for an injunction to protect that right. In its second paragraph of complaint, it alleges that there is a justifiable controversy between it and Statewide and Hoosier Co-op. as to their respective rights in regard to the utilization of their respective sites for the construction and operation of steam generating plants and asks for a declaratory judgment determining these rights.

Nowhere in this complaint is there any reference to a lurking conflict between privately-owned and government-sponsored utilities. It is likely that the same complaint would have been filed by IPALCO against any one of the four other utilities, including this relator, assuming they had bought land for the same purposes adjacent to IPALCO in Pike County. This complaint

states a cause of action peculiar and personal to IPALCO in which relator could have no legal interest.

On the other hand, relator's complaint filed in the Marion Circuit Court has an entirely different purpose. It is an injunction suit praying that Statewide be permanently enjoined from engaging in the business of generating, transmitting and selling electric energy as a public utility in the State of Indiana; from constructing and operating any electric generating plant and facilities; from using public funds loaned to Statewide for that purpose; from issuing any certificates, notes or other obligations of indebtedness as a public utility until such time as Statewide has obtained a certificate of public convenience and necessity from the State of Indiana to act as a utility.

Those two causes of action are separate and distinct and the relief sought in each case is entirely different. While relator had an economic interest which was common with the other four utilities as to whether Statewide could obtain a certificate of public necessity and convenience to operate as a public utility in the proceedings before the Commission, its petition for leave to intervene in those proceedings is immaterial and irrelevant to the cause of action now pending in the Pike County Circuit Court.

Burns' Ind. Stat., §2-222, 1946 Replacement, *supra,* does not apply in this case. It reads as follows:

> "The court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others or by saving their rights; but when a complete determination of the controversy can not be had without the presence of other parties, the court must cause them to be joined as proper parties. And when, in an action for the recovery of real or personal property, a person not a party to the action, but having an interest in the subject thereof,

makes application to the court to be made a party, it may order him to be made a party by the proper amendment."

In the first place, the defendant initiated the proceeding to bring in relator as a party, and respondents' decision to do so was based upon facts contained in defendant's verified motion. In the second place, a complete determination of IPALCO's riparian and prior rights can be made without the presence of relator. The statute applies only to the controversy alleged in IPALCO's complaint which does not concern relator.

Respondents say that IPALCO could have amended its complaint and "considerably expanded" it as to issues. But the fact is, this was not done. The controversy presented by IPALCO was limited. As was said in *Vulcan Detinning Co.* v. *American Can Co.* (1904), 130 F. 635, 637:

" . . . the controversy in a suit is the one actually presented by the pleadings, and not what it might have been. The cause of action is the subject-matter of the controversy."

The cause pleaded in IPALCO's complaint on its face shows that relator is not needed to be present for a complete determination of the case. *Chumley* v. *Roland et al.* (1959), 129 Ind. App. 264, 156 N. E. 2d 106.

Statewide's cross-complaint brought up matters which were being litigated between it and this relator and technically had no relationship to IPALCO's lawsuit. The practice of a party defendant bringing in a new party in order to litigate matters between themselves which cannot affect the right of the plaintiff to recover on his complaint is not permitted. *Hunter* v. *First Nat. Bank* (1909), 172 Ind. 62, 68, 87 N. E. 734.

It is a general rule that when one of two courts of concurrent jurisdiction has acquired jurisdiction of the subject-matter and the person in a particular case, the jurisdiction of that court becomes exclusive. *State ex rel. Pub. Serv. Comm.* v. *Boone C. C., etc.* (1957), 236 Ind. 202, 138 N. E. 2d 4, 139 N. E. 2d 552; *State ex rel. Allison* v. *Brennan, Judge* (1951), 229 Ind. 281, 97 N. E. 2d 925. The Marion Circuit Court, and, subsequently, the Hancock Circuit Court on change of venue, having first acquired jurisdiction over the subject-matter alleged in Statewide's cross-complaint filed in the Pike Circuit Court, has exclusive jurisdiction until the cause is finally disposed of. This court has jurisdiction to prohibit other courts of concurrent jurisdiction from interfering in that cause. *State ex rel. Allison* v. *Brennan, Judge, supra.*

A permanent writ of prohibition is hereby issued.

Achor, Arterburn and Landis, JJ., concur.

Jackson, J., not participating.

NOTE.—Reported in 192 N. E. 2d 149.