## LLOYD v. POWERS *et al.*

1. FARM CONTRACT—CONSTRUCTION—CONVERSION OF GRAIN—ACTION.

    Contract construed, and *held* that plaintiff was not entitled to a judgment in an action for conversion of a part of the grain grown under said contract.

2. PLEADING—BREACH OF CONTRACT EXECUTED BY AGENT—PRINCIPAL AS PLAINTIFF.

    Where a written contract is executed on the part of the party of the second part, as follows, "G., Agent for L.," L. is the proper party to sue for a breach thereof.

    HUDSON, J., dissenting.

Filed February 16, 1885.

Appeal from the district court of Stutsman county.

*Mr. Nickeus,* for appellants.

*Mr. Dodge,* for respondents.

CHURCH, J. The record in this case is so meager and defective, and the papers constituting the judgment roll are of so unusual a character, that it is difficult to treat the case in such a manner as to be inteligible to those not familiar with it, without transcribing the entire record, into the opinion of the court, and even then much would have to be left to inferences, drawn from the briefs of counsel. Inasmuch, therefore, as the case involves no important questions of general interest, we shall dispose of it very briefly. The first question raised is as to whether the writ is properly brought in the name of this plaintiff. We think it is. The transactions had their origin in a written contract between the defendant Powers, as party of the first part, and "William M. Lloyd, agent for the real estate hereinafter described, party of the second part," by which Powers agreed to work the land for a share of the crops, and it is for the conversion of some of these crops that the action is brought. The contract is executed on behalf of the party of the second part, as follows: "J. W. Goodrich, Ag't for W. M. Lloyd," Manifestly, therefore, Lloyd was the proper party to sue.

As to the construction of the contract, we think the parties have entirely misapprehended this instrument, and in their dis-

cussion of it have overlooked that portion of which plainly and clearly provides for determining the question of title as between Powers and Lloyd. What is said on this subject in the fourth paragraph of the contract (as printed) prohibits removal until division; and declares that until division title and possession shall remain in Lloyd. In the fifth paragraph, however, which so far as we have observed, is entirely unnoticed by counsel, it is provided that, "in consideration of the faithful performance of all the stipulations by Powers, Lloyd agrees, upon reasonaable request thereafter made, to give and deliver on said farm half of all grains and vegetables so raised and secure." How this provision came to be disregarded we are unable to comprehend; but, taken in connection with the rest of the contract, it clearly defines the intention of the parties to be, that, after the crops were gathered and threshed, it was to be ascertained and determined whether Powers had fulfilled his agreement, which, of course, must be done in the first instance by Lloyd, and, this being determined in the affirmative, thereafter, upon request, Lloyd was to deliver to Powers his share, one-half, of the crops. It would seem entirely manifest, therefore, that until such delivery—that is, until some act by Lloyd or his agent from which a delivery could be legally inferred—no title would pass to Powers, nor any right of possession. No matter how unreasonably Lloyd might refuse to deliver in compliance with the contract, Powers' only remedy would be by proper action; and if this were the whole of the contract, a substantially complete performance of his contract in all respects would be necessary to entitle Powers to demand his share, or any part of it.

The next paragraph, however, provides that two and one-half bushels of wheat per acre shall be held by Lloyd as security for the plowing back by Powers, as thereinbefore agreed, of so much land as shall remain unplowed. When is not stated, but we must assume that this relates to the time of division and delivery of the balance of Powers' share; so that it seems that, as security for the performance of this particular part of his agreement by Powers Lloyd was to "hold"—that is to say, "hold back," withhold, "retain,"—two and one-half bushels for

every acre remaining unplowed; the contract thus creating or providing for a lien on so much of Powers' share for that purpose.

Third. Whence arises the alleged conversion? Here the record leaves us very much in the dark. The complaint is short, and substantially in the usual form. The defendants, Powers and Bush & Corwin, answer separately, setting up in a manner at once needlessly particular, and yet wholly indefinite, certain matters supposed to constitute a defense, which would have been better covered by a general denial. Powers also sets up a counter-claim. We are left to infer, or rather to guess—for there are no facts in the record from which a legal inference could be drawn—that the season's crop amounted to about 2,200 bushels of wheat, 700 bushels of oats, and that after these had been threshed, Powers carried away and sold to Bush & Corwin 1,036 bushels of wheat, (which would be somewhat less than his share,) and we are told by the special verdict that he took 50 bushels more than his share of the oats, worth 50 cents a bushel. We are also informed by the verdict that Powers failed to do 128 acres of plowing back, which, at two and a half bushels per acre, would entitle Lloyd to retain 320 bushels of Powers' share of the wheat, found to be worth 85 cents a bushel. This question was also submitted to the jury: "Was there a division of the grain by consent of plaintiff, or of which he approved after it was made?" To which the jury answered "Yes."

Upon these facts the court rendered a judgment against all of the defendants for the value of the 320 bushels of wheat, $272, and against Powers severally for the value of the 50 bushels of oats, $25. The judgment is in form of a remarkable document, for which, we think, it would be difficult to find a precedent. We certainly hope it will not furnish a precedent for future guidance. We are unable to discover anything whatever in this record, from first to last, to justify a judgment against Bush & Corwin. There is no finding of fact, no conclusion of law, no adjudication, that they converted a single bushel of this grain. We cannot determine with accuracy upon what theory

respecting this contract the court proceeded. The jury found that there was a division of the grain by consent of the plaintiff. If, by "division," is here meant the delivery contemplated by the fifth paragraph of the contract, then it is difficult to see how the judgment can be supported. There was no delivery to plaintiff to hold as a pledge, and there could be no conversion. If, on the other hand by "division" is meant mere ascertainment of shares, then the question was not pertinent to any issue, unless, indeed, it had been accompanied by one calling for a finding of the amount of each one's share.

It nowhere appears that Bush & Corwin knew the facts regarding the ownership of this grain. The circumstances of Powers' occupancy may have been such as to confer upon him the apparent *indicia* of title, and no demand appears to have been made upon Bush & Corwin. As to the oats, perhaps the findings are sufficient to support the judgment; but that is the utmost that could be conceded. There is no finding or judgment upon the defendant Powers' counter-claim, and we are entirely unadvised of the reason. Counsel for appellants complain of this omission in their brief, but there is no assignment of error which covers it, and it is not called to our attention in any proper way.

In conclusion, we are compelled to believe and say that a little more care in the preparation and trial of this cause, in drawing the pleadings and other papers, and in the presentation of the appeal to this court, would have resulted in sparing counsel and court much needless labor.

The judgment of the court below must be reversed, and a new trial ordered.

PALMER, J., concurs. EDGERTON, C. J., concurs in the judgment for other reasons than those above given.

HUDSON, J., dissenting. I cannot concur in the majority opinion of this court, and desire to express briefly the grounds of my dissent. This is what is known as a farm contract, in which defendant Powers agreed to cultivate the land therein described for a share of the crops, to be divided at the end of

the season, and it provides that "until division, the title and possession of all hay, grain, crops and produce raised and grown, and produce on said premises, should be and remain in the party of the second part; and in consideration of the performance on the part of the party of the first part, the party of the second part agreed that, upon reasonable request thereafter made, to give and deliver on said farm the one-half of all grain and vegetables so raised upon said farm during the season to the party of the first part. The party of the first part also agrees that two and one-half bushels of wheat for every acre of the above described land that remains unplowed shall be held by the second party as security for the plowing back of the land as heretofore agreed." The jury found, by their special verdict, that Powers failed to plow back 128 acres, and that there was a division of the grain by consent of plaintiff, which was approved after it was made, and that Powers delivered to defendants Bush & Corwin 1,036 2{-100 bushels of wheat at 85 cents a bushel. The claim of plaintiff is for the conversion of 320 bushels, which he was entitled to hold as security for the plowing back.

The majority opinion of the court seems to assume that because there was a division of the grain, that constituted a delivery of one-half to the defendant Powers, and thereby the plaintiff waived his right to hold back two and one-half bushels for each acre, which Powers failed to plow. By the terms of the contract, the title to any part of the wheat did not pass to the defendant Powers, and he did not have possession any more than a farm hand would have possession of the property of his employer. It does not appear that he made any request for a delivery of any portion of the grain, without which he could not have a delivery. This latter clause was a qualification of that by which he was to have one half of the grain on division. In any view that can be taken of this contract, it must appear that the 320 bushels of wheat taken by the defendant Powers, and delivered to the defendants Bush & Corwin, and by them sold, was a conversion to that extent of the plaintiff's property, Powers having no right even to the possession of it. I think the judgment should be affirmed.