Consolidated Land & Irrigation Co. v. Hawley, Sheriff.

1. In an action for the conversion of personal property, where the position and claim of the taker, as shown by the answer, made if evident that a demand would have been merely prefunctory and fruitless, no demand is required.

2. If, upon any material question of fact, the evidence is such that the jury might reasonably have found for the plaintiff, it is error for the court to direct a verdict for the defendant.

3. While ordinarily, under a lease or contract providing for a division of the crops between landlord and tenant, they are tenants in common of such crops, it is competent for the parties in such lease or contract to agree otherwise, and to secure to the owner of the land the ownership and title to the product until division, or the performance of conditions named.

(Syllabus by the Court.   Opinion filed June 29, 1895.)

Appeal from circuit court, Brookings county. Hon. J. O. Andrews, Judge.

Action for conversion of wheat. From a judgment for defendant, plaintiff appeals. Reversed.

The facts are stated in the opinion.

*Horace Comfort* for appellant.

Under an agreement that all the produce shall be owned by the employer until a division is made according to the terms of the contract, the property can not be taken on execution until the contract is performed and a division made. Putman v. Wise, 27 Am. Dec. 317; Wentworth v. Miller, 53 Cal. 9; Hasbrousk v. Bouton, 41 Howard's Proc. 208; Edson v. Colburn, 67 Am. Dec. 730; Brazier v. Ansle, 51 Am. Dec. 408; Yates v. Kinney, 27 N. W. 132; Lloyd v. Powers, 23 N. W. 492.

*Philo Hall* and *J. P. Cheever* for respondents.

No conversion can exist without a demand. Plano Mfg. Co v. Elevator Co., 53 N. W. 202; Bernol v. Hovions, 17 Cal. 542; Lawrence v. Burnham, 4 Nev. 361. Where an agreement between persons to cultivate a farm is such as to make it a lease, the relation of landlord and tenant is established and not the relation of employer and cropper. Edson v. Colburn, 28 Vt. 631; Jeter v. Penn., 28 La. Ann. 230; Brown v. Jacquett, 94 Pa. 113; Alwood v. Buchman, 21 Ill. 200; Birningham v. Rogers, 46 Ark. 254; Woodruff v. Adams, 35 Am. Dec. 122; Strain v. Gardiner, 61 Wis. 174. Property like grain, which is susceptible of being separated into aliquot parts by measurement, weight, etc., can be separated and taken and sold in quantities, without regard to other persons who are tenants in common, in the same mass. 21 Am. Eng. Enc. Law 488; Cobby on Replevin, section 400; Groff v. Belche, 62 N. W. 400; Kaufman v. Schilling, 52 Mo. 218; Henderson v. Louck, 21 Pa. 359; Ingelbright v. Hammond, 19 Ohio 337; Ryder v. Hathway, 21 Pick. 305; Ames v. Mississippi, 8 Minn. 473; Forge v. Shattuck, 22 Barb. 568; Tripp v. Riley, 15 Barb. 334; Morgan v. Gregg, 46 Barb. 184.

KELLAM, J. The appellant, a corporation, being the owner of a farm in Brookings county, made a written contract with one Bucholtz, by which the latter was to work the same during the farming season of 1891 and 1892, putting in such crops as the party of the first part (appellant) might direct. This instrument—and we think it is unimportant whether it is called a "lease," or simply a "contract"—provided that Bucholtz was to furnish everything, and to till the farm in a husband-like manner. It then set out a number of agreements on the part of Bucholtz, as to plowing back a portion of the land after the harvesting of the crops, and maintaining the improvements thereon in good repair, and other express stipulations looking to the conservation of the property. It is then therein agreed as follows: "And the party of the first part hereby convenants and agrees that, after grain to be raised on said land shall be harvested and threshed, that the said party of the first

part will hand over and deliver to the said party of the second part the ¾ of the grain, hay and other produce raised on said land during the existence of this lease. And it is further mutually agreed by and between the parties hereto that the ownership, title, and possession of the crops to be raised on this land as aforesaid, and the grain realized from the threshing, shall be and belong to the said party of the first part, absolutely, until a division thereof as aforesaid, and until the said party of the first part shall deliver to, and turn over to, the said party of the second part, on said farm, the ¾ thereof." In September, 1892, respondent, as sheriff, levied upon and took possession of certain grain under an attachment against Buckholtz, and disposed of it. Appellant then brought this action against the sheriff, for conversion, claiming to be the owner of the grain so taken. At the close of the evidence the court directed a verdict for the defendant, and from a judgment entered accordingly—a new trial being refused—this appeal is taken.

Respondent seeks to justify this ruling of the trial court upon several grounds. He first contends that no conversion was proved, because no demand was shown to have been made upon the sheriff for a return of the grain so taken. If the grain taken under this attachment against Bucholtz was not his property, but the property of appellant, it is very doubtful if the circumstances of the respondant's seizure and Bucholtz's possession would have relieved it of the character of a wrongful taking, so as to make a demand necessary, as against the taker. See Rosum v. Hodges, 1 S. D. 313, 47 N. W. 140. But, independently, of this, no demand was necessary, because respondent absolutely denied the ownership of appellant, or his right to possession. He defended the taking and possession on the ground that Bucholtz, and not appellant was the rightful owner and possessor. In such case, where the position and claim of the taker make it evident that a demand would have been merely prefunctory and fruitless, no demand is required. Myrick v. Bill. 3 Dak. 284, 17 N. W. 268; Smith v. McLean, 24 Iowa. 322; Raper v. Harrison,

37 Kan. 243, 15 Pac. 219; Rosenau v. Syring (Or.) 35 Pac. 844.

Respondent also contends that the verdict was rightly directed for the reason that appellant failed to identify the grain taken by respondent as the grain raised upon the farm of, and claimed to be owed by, appellant. In this respect, the evidence presented by the abstract is not so full or definite as would be desirable; but there was certainly testimony from which the jury might have found that the grain was raised by Bucholtz, and that he worked, or raised grain on, no other land than this. The testimony did not necessarily prove these facts, but the jury might have fairly so found therefrom, and a verdict so finding could not properly have been set aside. The direction of the verdict, then, cannot be justified on that ground.

This leaves only the question of the ownership of the grain, and this must be determined upon the legal effect of the written contract, there being no conflict as to the facts. Ordinarily the relations of these parties to each other would make them joint owners of the crop raised, but it was competent for them, by prior agreement, to determine what their relations to each other and the crops should be. There were no affirmative undertakings on the part of appellant, but there were a number on the part of Bucholtz, of great advantage to appellant; and, presumably to secure the full discharge of these, it was agreed that "the ownership, title, and possession of the crops  *  *  *  and the grain realized from the threshing shall be and belong to the party of the first part, absolutely, until a division thereof as aforesaid, and until the said party of the first part shall deliver to, and turn over to, the said party of the second part, on said farm, the three-fourths thereof." These were proper subjects for agreement between the parties, and there can be no doubt as to their intention. Their legal effect, as declared in many cases, was to leave the legal title and control of the crops in the lessor until the lessee's covenants to him were fulfilled, or the crops divided. By their express stipulation they agreed between themselves that they should not be joint owners of the crops, but that the lessor should hold and own them until a

division was made; and there is no pretense that such division had been or ever was made, or that appellant had turned over to Bucholtz any part of such crops. As already intimated, it is not important to name this instrument a "lease," or simply a "contract," or these parties "landlord and tenant," or "owner and cropper," If there were no stipulations in the instrument by which their respective rights were fixed, then the law would have to determine the same; and as a means thereto, would define their relations to each other; but the parties themselves have done this, by an agreement so unequivocal in its intent and meaning that it must control, unless it was such an agreement as the parties under the circumstances were not allowed to make. No reason is suggested in argumant, and none occurs to us, which would forbid such stipulation. Contracts or leases very similar in terms to this have often been construed as above indicated. See Edson v. Colburn, 28 Vt. 632; Wenthworth v. Miller, 53 Cal. 9; Lloyd v. Powers, 4 Dak. 62, 22 N. W. 492; Moulton v. Robinson, 27 N. H. 550. See 4 Am. & Eng. Enc. Law, p. 895, note, where numerous authorities are cited to the proposition that: "There is no doubt that where one man farms land of another under an agreement by which he is to give the owner a part of the crop raised, for its use, he and the owner, in the absence of a stipulation providing otherwise, become tenants in common of the crops raised. But it is just as clear that the agreement between the parties may be so framed as to secure to the owner of the land the ownership of the product until the performance of a certain stated condition." The facts in evidence, upon the law as we understand it, made a case upon which the jury might have found for the plaintiff, and a verdict, therefore, ought not to have been directed for the defendant. The judgment entered upon such directed verdict is reversed, and the case remanded for a new trial. All the judges concur.