DIMOCK STATE BANK, Respondent, v. BOEHNEN, Appellant.

(190 N. W. 485.)

(File No. 5068. Opinion filed October 27, 1922.)

1. **Bills and Notes—Conditional Delivery—Conditional Delivery of Note Held a Jury Question; "Hold"; "Take"; "Hold the Note Back."**

On testimony by defendant maker that he delivered his note, payable to a local co-operative store, for a share of its stock, with the understanding the note would be "held back for awhile," until he decided whether he would trade his farm and move, in which event the store would "take it back," there was a jury question whether the parties had agreed to a conditional delivery, under Rev. Code 1919, Sec. 1720, for "hold" means to retain or keep, and the phrase "hold the note back" means to keep or retain the note, and one meaning of the word "take" is to revoke or retract, as "to take back one's promise."

2. **Bills and Notes—Conditional Delivery—Note May Be Conditionally Delivered.**

Under Rev. Code 1919, Sec. 1720, a note may be conditionally delivered, to take effect only on the happening of the condition.

3. **Trial—Jury—Disputed or Undisputed Facts, from Which Different Conclusions May Be Drawn, Create Jury Question.**

If the facts are disputed, or, if undisputed, are such that different impartial minds might fairly draw different conclusions from them, there is a jury question.

Appeal from Circuit Court, Davison County; HON. FRANK B. SMITH, Judge.

Action by the Dimock State Bank against Leo J. Boehnen. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

*H. G. Giddings,* of Mitchell, for Appellant.

*Spangler & Wire,* of Mitchell, for Respondent.

SHERWOOD, J. On October 20, 1917, one Fred Gross, a stockholder in Dimock Rochdale Company, together with an agent of that company, secured from Leo J. Boehnen an application for one share of the company's stock, together with Boehnen's promissory note for the sum of $105, dated October 20, 1917, payable on or before December 1, 1918, to Dimock Rochdale Company, at Dimock, S. D. Dimock Rochdale Company was apparently a local co-operative store corporation. November 1, 1917, Dimock

State Bank, through its cashier, J. U. Steichen, purchased this note from Dimock Rochdale Company, with 66 other notes, and paid for same. Suit was brought on this note. The case was tried to a jury, and after both sides had offered evidence and rested, plaintiff moved for a directed verdict, which was granted. Judgment entered, and defendant appeals.

[1] Defendant in his answer alleged in substance and effect, and now contends, that he executed the note and application and delivered them to the agent of Dimock Rochdale Company under an oral agreement, and not otherwise, that such note and application should not be effective for 15 or 30 days, and if within that time he traded his farm and decided to remove from Dimock the note should be canceled and returned to him; that within 6 days after so delivering said note he traded his farm and decided to move from near Dimock, and so notified the secretary of Dimock Rochdale Company and demanded his note; and that, if plaintiff bought said note, he bought it with full notice and knowledge of all such facts.

The testimony is very brief, and shows that one Gross, a stockholder, with another person who was an agent of Dimock Rochdale Company, came to defendant's farm near Dimock on the 20th day of October, 1920, and solicited him to buy a share of stock in the company; and plaintiff testifies the following conversation occurred:

"I told them I was trading this farm that I was living on for a half section, and if I made that deal I would not do any trading at Dimock. If I did move, I would not want the stock at all. They said I might as well sign up, and if I did stay it would benefit me, and if I made this deal they would take it back. They agreed to hold the note back 15 or 30 days, * * * until they seen whether I made this deal or not. * * * I told them I would sign under these conditions, and I did sign right after that talk."

The witness then says he drove to Mitchell the next day after signing the note, and traded for land five miles west; and that on the 24th or 25th of October he notified Steichen, cashier of Dimock State Bank, that he had signed this note, and the conditions under which he had signed it, and notified Mr. Steichen not to buy the note, as he (Boehnen) did not intend to pay it. On the same day he notified Henry Kirkenbeck, secretary of the

Dimock Rochdale Company, that he signed the note on condition that, if he moved away, he would not take the stock, and of the other conditions under which he signed the note, and that he expected them to keep their agreement.

Gross, a witness for plaintiff, on cross-examination testified:

"Before Boehnen signed, the salesman told him he would hold the note up for a while. * * * I do not remember how long the salesman said he would hold the note."

Steichen bought the note November 1, 1920, but denied any talk with defendant, or any notice or knowledge of any defense until after he had bought the note.

The word "hold" means to retain or keep and the phrase "hold the note back" means to keep or retain the note. Loyd v. Powers et al, 4 Dak. 62, 22 N. W. 492; 21 Cyc. 438. And one of the meanings of the word "take" is:.

"To revoke; retract; as to take back one's promise." Webster's New International Dictionary, p. 2107.

Fairly interpreting the rather peculiar language in which this testimony is given, plaintiff says Gross and the company's other agent agreed, if he would sign and deliver to them the note and application for stock they would keep them for 15 or 30 days, and if within that time plaintiff traded his farm for another his promise to take the stock and give the note would be revoked or retracted. Under this agreement the note was not to be delivered as a note in any event for 30 days, and not at all if defendant traded his farm within 30 days and decided to remove from Dimock.

The farm was traded the day after the note was signed, the company was notified within 6 days from the date of the note that the trade had been made, and the defendant expected them to keep their agreement, which in effect required them to return his note. The plaintiff bank had knowledge of these facts 5 days before it bought the note, and they were not holders in due course if defendant's testimony was true. This was a conditional delivery of the note. Section 1720, R. S. 1919, provides:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in

order to be effectual must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument."

This statute re-enacts the common law, 8 C. J. § 333, p. 203.

[2] A promissory note may be delivered on condition, and to take effect only on the happening of the condition. Larson v. Seguin, 34 S. D. 453, 149 N. W. 174; McCormack Harvesting Machine Co. v. Faulkner, 7 S. D. 363, 64 N. W. 163, 58 Am. St. Rep. 839. It is said:

"A delivery may be conditional, without the use of express words to that effect at the time. That conclusion may be drawn from all the circumstances which properly form a part of the entire transaction, whether in point of time they precede or accompany the delivery." Hunter et al v. First National Bank of Ft. Wayne et al, 172 Ind. 62, 87 N. E. 734; George H. Beach, Receiver, v. Louis H. Nevens, 162 Fed. 129, 89 C. C. A. 129, 18 L. R. A. (N. S.) 288.

It is said in 21 R. C. L., p. 837, § 20, note 18:

"If an agent procures a contract by illegal means, his principal, though ignorant of it, and not consenting to the wrongful act, is affected by it to the extent that he cannot enforce the contract so secured."

[3] It is settled law in this state that:

"If the facts are in dispute, or, if undisputed, they are such that different impartial minds might fairly draw different conclusions from them, they should be submitted to the jury." Bates v. Fremont, Elkhorn & Missouri Valley R. Co., 4 S. D. 394, 57 N. W. 72.

Case reversed, and new trial ordered.

GATES, P. J., not sitting.

Note—Reported in 190 N. W. 485. See American Key-Numbered Digest, (1) Bills and Notes, Key-No. 537(2), Bills and Notes, 8 C. J. Sec. 1373; (2) Bills and Notes, Key-No. 64, 8 C. J. Sec. 336; (3) Trial, Key-No. 142, 38 Cyc. 1536-1538.

On admissibility of parol evidence to show that a bill or note was delivered upon condition, see notes in 18 L. R. A. (N. S.) 288; L. R. A. 1917C, 306.

On parol evidence to show conditional delivery of note, see note in 20 A. L. R. 424; 3 R. C. L. 862.