DACOTAH PACKING COMPANY, Appellant, v. BERTELSON, Respondent.

(217 N. W. 393.)

(File No. 5578. Opinion filed December 31, 1927.)

*Schrader & Lewis,* of Rapid City, for Appellant.
*Buell, Denu & Philip,* of Rapid City, for Respondent.

BROWN, J.   This is an action on a promissory note, dated May 20, 1919, signed by the defendant, and promising to pay the plaintiff $7,000, with interest at 6 per cent per annum, one year after date.   No part of the principal or interest hase been paid.

The defense is that the note was delivered conditionally, upon the understanding and agreement with plaintiff that it was not to take effect or be construed as being in force until a stockyards and packing plant in Rapid City, which the plaintiff corporation contemplated constructing, were completed, and if such stockyards and packing plant were not completed within 3 years, the note was to be returned to defendant.   The stockyards and packing plant never were constructed.

The case was tried to a jury which found a verdict in favor of the defendant, and from the judgment upon this verdict and an order denying a new trial, the plaintiff appeals.

Defendant testified, in substance, that on May 20th, the date of the note, he owned $1,000 of stock in the plaintiff corporation; that on that date a sales agent for plaintiff came to defendant's farm and solicited him to buy more stock, assuring him that in less than a month the stock would go up to 125 cents on the dollar, and that he took $2,000 additional stock and gave the sales agent his note for that amount; that the sales agent pressed him to take still more stock, telling him that the stock would certainly be advanced to $125 a share in a couple of weeks, and after some further conversation the defendant says he agreed to take $7,000 additional stock and give his note for it on condition that the agent would give him a written guaranty that the stock would advance, as stated.   The agent said he could not give such a guaranty, but the officers of the company could, and thereupon it was agreed between the defendant and the agent that defendant should sign an application for $7,000 of stock and give his note for that amount, and

that the note and application would not be delivered to the company until the defendant could go into Rapid City and talk the matter over with the officers of the company. The next day, and before defendant could get to Rapid City, a certificate for 90 shares preferred stock of the corporation was made out and sent by registered mail to defendant, who received it on May 24th.

On May 22d, before he had received the certificate, defendant appeared at the company's office and had an interview with H. F. Fellows, the secretary and a director of the corporation, with whom the representations and arrangement made by the agent were talked over by defendant. Fellows told the defendant that the company could not make any such guaranty, and that no sales of stock could be made on that basis at all; and Fellows testified that about this time Mr. Rinehart and Mr. Burke, the other two directors, came in, and they met as a board and spent nearly the whole forenoon discussing the matter, and finally a thorough understanding was had on the part of every one. The directors then told Bertelson that the subscription contract contained a provision by which the corporation might reject an application, and his application was definitely rejected; that they then made an arrangement with him that the company would accept this $2,000 note unconditionally in payment of $2,000 of stock and they would hold his note for $7,000 for a period of 3 years under an agreement that he would keep the stock certificate that had been issued for 90 shares, and if at the end of 3 years the plant and yards were not in operation, or if he was not satisfied with the investment, he could have his note back and return the stock and have a new certificate for 20 shares issued to him; that Bertelson asked that this be reduced to writing, which was done, and all three of the directors signed it, and the writing was pinned to the note, and that this writing remained still pinned to the note when he ceased to be an officer of the company in October, 1920. Fellows further testified that the $2,000 note was discounted at the bank in Rapid City on the day it was received by the company, but that the $7,000 note was never transferred or disposed of by the company, and that the reason for this was because of the agreement made with Mr. Bertelson that the $7,000 note was accepted conditionally and upon an agreement and understanding by the company that, if at the end of 3 years the plant and yard were not in operation, this note would be returned to Mr. Bertelson.

Bertelson testified that two days after the agent procured the note in controversy he was in Rapid City and talked to Mr. Fellows, and that on the same day after talking with Fellows, Burke and Rinehart came in, and all three together talked of the representations made by the agent; that Fellows said Bertelson had come to demand his agreement with the agent, and they said they could not agree on that deal, that they would not accept that at all, but they had talked it over, and Mr. Burke said they had made an agreement among themselves and would keep the $2,000 note, "but this $7,000 note is not to be a note for 3 years until this stockyards and packing plant would be completed and in operation," and that was our agreement.

■■ All of this line of evidence was received over the objection of the plaintiff, that, when the note was handed to the agent, it became a contract in writing between the defendant and the company which could not be contradicted or varied by oral evidence.

Revised Code of 1919, § 1720, provides that:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, * * * the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument."

The testimony of defendant and Fellows shows the conditional delivery of this $7,000 note. It was not to be effective as a note until the stockyards and packing plant were complete and in operation, and, if they were not complete and in operation within 3 years from its date, the note was to be returned. The certificate for 90 shares preferred stock was to be returned and a new certificate for 20 shares, which had been paid for by the $2,000 note, was to be issued.

That oral evidence is admissible to show that the delivery of a promissory note is conditional and not for the purpose of transferring the property in the instrument is settled in this state by repeated decisions. McCormick Har. Mach. Co. v. Faulkner, 7 S. D. 363, 64 N. W. 163, 58 Am. St. Rep. 839; Ricords v. Mead, 45 S. D. 617, 189 N. W. 703; Dimock State Bank v. Boehnen, 46 S. D. 50, 190 N. W. 485; City Nat. Bank of Huron v. Dwyer, 47

S. D. 567, 200 N. W. 109. See, also, note to Vincent v. Russell, 101 Or. 672, 201 P. 433, 20 A. L. R. 417.

Fellows was asked, in substance, to state the conversation·between Bertelson and the directors of the company on this occasion, whereupon plaintiff's counsel, being granted leave to interrogate the witness, asked:

"Q. Mr. Fellows, what occurred here was before the board of directors acting as a board? A. Yes; we met and acted as a board, and there were minutes made of that meeting. You have the minutes there in that book, or you ought to have.

"Q. What was done. there was made a record? A. Yes; it was."

Plaintiff then objected to any evidence on the subject for the reason that the writing was the best evidence, parol evidence not being admissible to explain the records of the corporation or minutes in writing.

The question did not call for what was done or for anything that would ordinarily be included in the written minutes, and there was no error in overruling the objection. When the witness stated the conversation, and in the course of his answer stated what was done as a result of the conversation, plaintiff moved to strike out the entire "evidence of this witness" and not merely that which related to what was done and which may have been recorded in the minutes.

There was no error in denying this motion.

Evidence was given on behalf of the defendant to the effect that on January 20, 1920, a letter was written by Fellows to Bertelson advising him that the $7,000 note had been extended to May 5, 1921, and that in consequence of a conversation between Fellows and Bertelson after that time another letter, dated February 11, 1920, was written to Bertelson stating that his $7,000 note was extended to May 5, 1922, and it is contended that these letters refute Mr. Fellows' testimony as to the conditional delivery of the note. This letter and also other evidence introduced on behalf of plaintiff may tend to contradict or discredit Fellows' testimony, but his credibility was for the jury.

It is contended that the court erred in sustaining an objection to the question asked of Timon Burke, who acted as clerk at a stockholders' meeting in October, 1920, "How many shares

of stock at that meeting did Bertelson register?" and in excluding a loose sheet of paper marked Exhibit 5-A, purporting to be a list of stockholders and of "stock registered by stockholders at that meeting."

If it be conceded that sufficient foundation had been laid for the question and for the introduction of the exhibit, still it is not apparent how the plaintiff was prejudiced by the ruling. Defendant admitted that he had a certificate for 100 preferred shares (which shares show on their face that they carry no voting power), and that he attended meetings of the stockholders, and that he was present at this meeting in October. He then held 10 shares of stock which he had acquired before the $7,000 note was signed, and had proxies of other stockholders at that meeting.

The further contention is made by plaintiff that the conditional delivery of the note was in violation of section 8, art. 17, of the state Constitution, which provides:

"No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void."

The plaintiff claims that defendant, by accepting the certificate for 90 shares of preferred stock, is estopped to assert the conditional nature of the note, that to permit him to deny his liability on the note is contrary to both law and public policy, that plaintiff was prohibited by the section of the Constitution just quoted from issuing stock in exchange for a note that was not to be in effect until the plant was completed and in operation, and that defendant by retaining the certificate of stock became absolutely liable on the note; that it is a maxim of jurisprudence that no one can take advantage of his own wrong, and that the delivery of the certificate of stock was a wrong and defendant was a party to the wrong; therefore, defendant by consenting that plaintiff should issue the certificate of 90 shares of preferred stock to him, which issue plaintiff contends is in violation of section 8, art. 17, of the state Constitution, made himself liable for the payment of the note.

It is not clear to us how this section of the Constitution can be invoked to cut off the defense urged by the defendant without at the same time cutting off the cause of action relied upon by plaintiff. If no one can take advantage of his own wrong, and if the delivery of the certificate of stock to defendant at the time it

was delivered was wrong, then plaintiff was certainly a party to the wrong, and its cause of action on the note is annihilated by the weapon which itself seeks to wield against defendant. As was said by the Supreme Court of California in the case of Jefferson v. Hewitt, 103 Cal. 624, 37 P. 638, in construing a statutory provision similar to section 8, art. 17, of our Constitution:

"If that section [Civ. Code, § 359] has any bearing on the case, it seems to us, it must be construed to render void the certificate, and not the condition as to payment [of the note]."

We have examined all the assignments of error relating to the admission and exclusion of evidence, and those relating to the charge of the court to the jury, and find no prejudicial error.

The plaintiff's motion for a new trial was based upon error in law occurring at the trial and excepted to by plaintiff, and insufficiency of the evidence to justify the verdict, and that the verdict is against the law, and also upon the further ground of newly discovered evidence.

In the course of his testimony, the witness Fellows stated that when Bertelson came to the office of the company on May 22, 1919, Miss Aikman, an employee in the office, was present, and the newly discovered evidence relied on was, in substance, to the effect that on May 21st she made entries on the stock ledger showing that to Bertelson was issued 90 shares and notes taken, $2,000 and $7,000; that she prepared a certificate for 90 shares of preferred stock, and after its signature prepared the usual letter accompanying each certificate and inclosed it with the certificate and mailed it to Bertelson at his post office address, Box Elder, S. D.; that the sales agent presented his application for commission on this transaction, and Mr. Fellows gave him a check. She also attached to her affidavit carbon copies of letters which she said were dictated by Mr. Fellows, one dated May 21, 1919, to the Live Stock Exchange Bank at Newell, S. D., inclosing his signature to be recognized in payment of checks, and saying that checks signed by O. V. Rinehart, treasurer, were also to berecognized; that Mr. Rinehart was not just then available so his signature could not be sent; and a letter dated May 21, 1919, to W. H. Jones, Caputa, S. D., stating that "Mr. Rinehart will be absent from town for perhaps a week." Attached also to her affidavit was a copy of a letter dated May 21, 1919, transmitting to Bertelson 90 shares of preferred stock, which stated:

"This is issued on your application given to Mr. R. Heminggray on the 20th of May, 1919," and signed "Dacotah Packing Company, by ———, Secretary."

Affidavits of John F. Schrader, one of the attorneys for plaintiff, and of Wilson Marsh, president of the plaintiff corporation, set forth the efforts made by them after the trial to learn the whereabouts of Miss Aikman, who was now married, and whose name was now Esther Turner, living at Wall, S. D., 87 miles distant from the city of Sturgis, where court was held, and that they first learned through her of the existence of the three letters dated May 21, 1919; that the testimony of Mrs. Turner would be material and would probably bring about a different result on a new trial; and that they had no knowledge that Miss Aikman had been present at this conversation until Fellows so testified at the trial.

There is also the affidavit of Julius Lindy, president of the Citizens' Bank & Trust Company, showing the issuing of a certificate of deposit for $2,000 to plaintiff on May 20, 1919.

But it was shown on the trial that the certificate was sent to Bertelson by registered mail, and the registry receipt was admitted in evidence. A diligent search of the company's letter files should have revealed the copy of the letter transmitting the certificate, and further, it is not shown that the defendant was called upon to produce the original letter. The issuing of the certificate of deposit for $2,000 was not material. It was admitted that the $2,000 note was delivered unconditionally, and the defendant testified that he intended to take $2,000 of stock. The most that can be said for the letters of May 21st addressed to the Live Stock Exchange Bank, at Newell, and W. H. Jones, at Caputa, is that they tend to contradict Mr. Fellows' statement that Rinehart and Burke were present on May 22d and signed the agreement to which he testifies, showing that the $7,000 note was not to take effect until the stockyards and packing plant were completed and in operation. These letters, however, only tend to show that Rinehart may not have been in Rapid City on May 21st, but do not show that he was not in Rapid City on May 22d when the transaction testified to by Fellows is said to have taken place. Besides, even if the letters indicated that Rinehart was not in town on May 22d, the only tendency would be to impeach Fellows' testimony as to the time when the transaction was had. The material fact was

whether or not the transaction actually occurred. It is not an abuse of discretion to deny the motion for a new trial on the ground of newly discovered evidence which only goes to discredit or impeach a witness or which is merely cumulative. Scheffer v. Corson, 5 S. D. 233, 58 N. W. 555; Axiom Mining Co. v. White, 10 S. D. 198, 72 N. W. 462; Smith v. Mutual, C. G. F. G. Ins. Co., 21 S. D. 433, 113 N. W. 94; Lunschen v. Ullom, 25 S. D. 454, 127 N. W. 463; Dickmann v. Thomas, 36 S. D. 283, 154 N. W. 811. And it is settled by numerous decisions of this court that the granting or refusing of a new trial on the ground of newly discovered evidence is largely discretionary with the trial court, and the exercise of such discretion will not be disturbed except in case of manifest abuse. Longley v. Daly, 1 S. D. 257, 46 N. W. 247; Grant v. Grant, 6 S. D. 147, 60 N. W. 743; Bedtkey v. Bedtkey, 15 S. D. 310, 89 N. W. 479; Anderson v. Medberry, 16 S. D. 329, 92 N. W. 1087; Grigsby v. Wolven, 20 S. D. 623, 108 N. W. 250; Alderson v. Larson, 28 S. D. 369, 133 N. W. 809; Barcus v. Prokop, 29 S. D. 39, 135 N. W. 756; Dickmann v. Thomas, 36 S. D. 283, 154 N. W. 811; Zarnecke v. Kitzman, 44 S. D. 295, 183 N. W. 867.

The judgment and order appealed from are affirmed.

CAMPBELL, P. J., and POLLEY, SHERWOOD, and BURCH, JJ., concur.