GEER, Respondent, v. CASSEM, Appellant.

(230 N. W. 226.)

(File No. 6684. Opinion filed April 11, 1930.)

*Miller & Shandorf*, of Mitchell, for Appellant.
*H. G. Giddings*, of Mitchell, for Respondent.

BROWN, P. J.   Plaintiff sues upon five separate causes of action.   No question is presented as to their joinder.   On the first two, verdict was for defendant, and they are therefore not involved on this appeal.   The third cause of action was for an alleged balance for wages due plaintiff's husband which had been assigned to

her prior to the commencement of this action. The fourth cause of action was for assault and battery alleged to have been committed by defendant on plaintiff on May 8, 1929, and on which the jury gave a verdict in her favor for $250. The fifth cause of action was for slander alleged to have been uttered concerning plaintiff by defendant at the time of the assault and battery, and for which the jury gave a verdict in favor of plaintiff for $500. Defendant appeals from judgment entered on the verdicts and from an order denying a motion for a new trial.

Plaintiff's husband, Roy Geer, was employed by defendant to work a farm. There is some dispute as to the terms of the employment. Plaintiff claims that her husband was to get $60 a month straight and one-half the milk and cream from three cows, and that plaintiff's husband was to buy one-half interest in fifty chickens on the place and get one-half the eggs. Defendant's version was that he should pay $45 a month for the month of March and $60 thereafter. Plaintiff's husband began work on March 4th and quit voluntarily on the morning of May 7th. Next day defendant came out to the farm and a dispute arose between plaintiff and defendant about the number of chickens they should have on the place. Roy Geer at this time was sick in bed, and neither heard nor saw anything of the controversy. Plaintiff testified that in the course of the dispute defendant grabbed her by the throat and choked her, called her a liar and a thief and said her character was no good, and that when he used this language to her a man named Joe Graff was standing about fifty feet distant. Defendant denied having ever touched plaintiff and denied saying she was a liar and thief and that her character was no good, or anything to that effect. He said that in the course of the dispute that she made a lunge at him, and that he got into his car and drove away. Graff testified that he was in the hog house and happened to look through the window and saw defendant trying to get in the car, and plaintiff between him and the car following him around, that he did not stay to see any more, but went through the hog house to the feed lot beyond to feed cattle, and that when he returned defendant had left, that he did not hear any conversation or talk between plaintiff and defendant at all, and did not hear defendant say that plaintiff was a liar and thief or that her character was no good.

■ The record is not clear or definite as to where Graff was at the time the slanderous words are claimed to have been spoken. At one place plaintiff said Graff was distant seventy-five rods when defendant said she was a thief and that her character was no good; at another place she says he was distant about fifty feet. In his argument appellant's counsel says "the word 'rods' is probably an error in the record, and should probably be 'feet,'" but respondent's counsel controverts this and says the testimony was seventy-five rods, and there was no qualification of this; that in fact slanderous epithets were hurled at respondent by appellant at least twice; that at the time of the first statement Graff was in the hog house seventy-five rods away, and respondent concedes that the statement made at that time did not constitute slander, because there was no publication. Respondent says: "The conversation upon which the slander is based occurred when Joe Graff came from the hog house and stood for a minute within fifty feet of the parties looking at them." Respondent's testimony as to what occurred at this juncture is that appellant said to her, "'I have found out what you are,' and she said 'What am I,' and he said 'you are a thief and a liar and your character is no good.'" This is the statement upon which her counsel says the cause of action for slander is based. Graff denies having heard any such language spoken. The words, if any such words were spoken at this time, followed close upon the earlier statement to the same effect while Graff was seventy-five rods distant, which had been followed by the personal encounter between the parties in which respondent says appellant choked her and when she had got loose she started for him. All that he said on this occasion of his own initiative was that he had found out what she was. When in the heat of the encounter she said in response to this, "What am?" she could not have reasonably expected him to say that she was a saint or an angel. According to her testimony he said just a few minutes or seconds previously to her "You stole my eggs and you stole my chickens and your character is no good." When on the latter occasion, in response to his statement that he had found out what she was, she retorted "What am I?" she could not have expected anything better than a repetition of what he had said before. In view of the fact that she practically invited whatever respondent said at this time, and of the further fact that Graff testified that

he did not hear appellant speak the words charged or say anything whatever about respondent's character, we think the evidence was insufficient to justify the submission of the question of slander to the jury.

■ ■ The third and fourth causes of action were properly submitted to the jury, and there is nothing in the record justifying this court in interfering with the verdict of the jury in those two causes of action.

The court did not err in withdrawing from the consideration of the jury defendant's counterclaim for chickens converted by plaintiff. As the case stood at the close of the evidence, there was not sufficient evidence to warrant the submission of that question to the jury. Defendant contends that the affidavits submitted on the motion for a new trial sustained this counterclaim. But while this may be true, such affidavits were only in the nature of cumulative and impeaching evidence.

■ The motion for a new trial was based upon the ground, among others, of newly discovered evidence, set forth in the affidavits of C. O. Robinson and his wife, Amy, to the effect that on May 11, 1927, plaintiff had procured Robinson to take twenty-three chickens from defendant's farm and keep them at his place until plaintiff and her husband could get settled in their new location, and told the Robinsons that, if any one should ask about the chickens, they were to claim that all the chickens belonged to themselves (the Robinsons), and that they had no knowledge of what had become of plaintiff's chickens; and that she further detailed to them the circumstances of the dispute between her and defendant, and said that she had chased defendant around his car and would not let him get into the car, that she slapped at him, and defendant said that he did not want any trouble with her, and that he would not touch a woman and she retorted, "No you wouldn't touch a man, either; if there was any fight in you, you would have fought old Jackey Reed at the time he slapped you." That she told Cassem that he was a coward; that Cassem never touched her, and that all he did was throw up his hands and tell her not to hit him, and that plaintiff had desired the Robinsons to attend the trial and testify in her behalf that her health was ruined after her trouble with Cassem; that they did not want to get mixed up in the lawsuit and so arranged to be away from home, lest they might

be subpœnaed, and that they kept away so as not to get mixed up in the lawsuit.

It is doubtful if sufficient showing of diligence has been made to warrant granting a new trial on the ground of newly discovered evidence. Appellant had information before the trial which, if diligently followed up, might have led to information that would have warranted subpœnaing Robinson and his wife as witnesses at the trial. It is also remarkable that the Robinsons should take such extraordinary pains to be out of the way when court met lest they might be subpœnaed and get mixed up in the lawsuit, and after the trial they should be so ready to come forward with the information on which it is sought to base the application for a new trial. But in any event all of the alleged newly discovered evidence is in the nature of impeachment only of plaintiff's testimony and is not such to justify this court in interfering with the discretion of the trial court in denying a new trial. Dacotah Packing Co. v. Bertelson, 52 S. D. 324, 217 N. W. 393.

The judgment is reversed, with directions to the trial court to enter judgment on the verdict of the jury as to the third and fourth causes of action only, less the amount found for defendant on his counterclaim for house rent.

No costs will be taxed in this court upon this appeal.

POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.